956 F.2d 399
 139 L.R.R.M. (BNA) 2468, 60 USLW 2576
 Mary A. HOHE; Timothy L. Cassel; Joseph F. Clover, III;
Vickie M. Clover; Steven A. Ebersole; Linda R. Garman;
Arlene J. Hetzel; Carol D. Hench; Francis D.M. Hill, Jr.;
Mark A. Kantorczyk; Nancy Lebo; Gerald J. Maher; Jeri
Morris; Jack H. Reefer, Jr.; Thompson M. Young, II, Appellants,
v.
Robert P. CASEY, Governor, Commonwealth of Pennsylvania;
Joseph L. Zazyczny, Secretary of Administration,
Commonwealth of Pennsylvania; G. Davis Greene, Jr., State
Treasurer, Commonwealth of Pennsylvania; Commonwealth of
Pennsylvania; and Council 13, American Federation of State,
County and Municipal Employees,
v.
Leroy S. ZIMMERMAN, Attorney General, Commonwealth of
Pennsylvania; Don Bailey, Auditor General, Commonwealth of
Pennsylvania; Frederick T. Marens, Executive Director,
Pennsylvania Crime Commission; Kenneth R. Reeher, Executive
Director, Pennsylvania Higher Education Assistance Agency;
William R. Shane, Chairman, Public Utility Commission;
Donald W. Bagenstose, Executive Director, State Public
School Building Authority; James H. McCormick, Chancellor,
State System of Higher Education; Robert J. Bray, Jr.
 No. 91-5002.
 United States Court of Appeals,
Third Circuit.
 Argued May 13, 1991.
Decided Feb. 10, 1992.
 
 Raymond J. LaJeunesse, Jr. (argued), National Right To Work Legal Defense Foundation, Springfield, Va., John G. Milakovic, Thomas A. Beckley, Charles O. Beckley, II, Beckley & Madden, Harrisburg, Pa., for appellants.
 Alaine S. Williams (argued), Caren Litvin Sacks, Walters, Willig, Williams & Davidson, Philadelphia, Pa., for appellee Council 13 of the American Federation of State, County and Municipal Employees, AFL-CIO.
 Susan J. Forney (argued), Sr. Deputy Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Office of the Attorney General of Pennsylvania, Harrisburg, Pa., for appellees Commonwealth of Pennsylvania, Robert P. Casey, Joseph L. Zazyczny, G. Davis Greene, Jr., Leroy S. Zimmerman, Dan Bailey, Frederick T. Martens, Kenneth R. Reeher, William T. Shane, Donald W. Bagenstose, James H. McCormick.
 Before HUTCHINSON, COWEN, and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Class action plaintiffs, nonunion employees, appeal the order of the district court to the extent it grants final judgment in favor of various officials of the Commonwealth of Pennsylvania, (the "Commonwealth"), and Council 13 of the American Federation of State, County and Municipal Employees, ("Council 13"), (collectively "the defendants"). Plaintiffs' sought, inter alia, declaratory and injunctive relief against the implementation of Section 2 of The Public Employee Relations Act No. 84 of 1988 (S.B. 291), Pa.Stat.Ann. tit. 71, § 575 (Purdon Supp.1990) [hereinafter "Act" ]. This section permits the Commonwealth and the exclusive representative selected by the unionized employees of the Commonwealth to enter into a fair share fee agreement.[1]
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In July 1988, the General Assembly of the Commonwealth of Pennsylvania passed the Act, which became effective immediately. Pursuant to the Act, the Commonwealth of Pennsylvania and Council 13, the exclusive bargaining representative for approximately 54,000 Commonwealth employees, amended their collective bargaining agreement to provide for the deduction of fair share fees. Between August 8 and 12, 1988, Council 13 mailed notices to approximately 18,000 nonmembers for whom it served as the exclusive collective bargaining representative. This notice informed the nonmembers that beginning August 16, the Commonwealth would deduct fair share fees from their wages and transmit those fees to Council 13. The notice also provided nonmembers with certain information concerning Council 13's calculation of the fair share fee and the procedures it had established to enable the nonmembers to challenge the fee.
 
 
 3
 On August 26, 1988, the fifteen named plaintiffs, Commonwealth employees represented by, but not members of, Council 13, initiated this action against Council 13 and various officials of the Commonwealth. They sought injunctive and declaratory relief under 42 U.S.C. § 1983 barring the implementation of the Act, and certain subsections related to provisions in the collective bargaining agreement between the Commonwealth and Council 13, as well as the collection procedures adopted by Council 13. Plaintiffs also requested damages for the alleged constitutional violations. The basis of the nonmembers' § 1983 claims was that the challenged subsections, provisions and procedures violated the First and Fourteenth Amendments of the United States Constitution.
 
 
 4
 On August 30, 1988, the district court issued a temporary restraining order prohibiting the Commonwealth from deducting the fair share fees pending a hearing on plaintiffs' motion for a preliminary injunction. See Hohe v. Casey, 704 F.Supp. 581 (M.D.Pa.1988). On September 15th, after the hearing, the district court lifted the restraining order and denied plaintiffs' request for a preliminary injunction. The plaintiffs appealed that order to this court, which affirmed on the ground that plaintiffs failed to show irreparable harm. See Hohe v. Casey, 868 F.2d 69, 70 (3d Cir.1989).
 
 
 5
 Subsequent to the denial of their motion for a preliminary injunction, plaintiffs amended their complaint and sought class certification. On January 18, 1989, the court ordered that
 
 
 6
 the action shall be maintained as a class action under Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(2) by the plaintiffs on behalf of class comprised of the plaintiffs and all other individuals employed since August 16, 1988, by the Commonwealth of Pennsylvania, or its departments, boards, commissions, agencies, authorities, systems and other instrumentalities, who are represented exclusively for purposes of collective bargaining by Council 13 ... and who are not members of said labor organization.
 
 
 7
 Hohe v. Casey, 128 F.R.D. 68, 72 (M.D.Pa.1989).
 
 
 8
 In April 1989, Council 13 moved for summary judgment, the Commonwealth moved for judgment on the pleadings, and plaintiffs for partial summary judgment. In ruling on these motions, the district court determined that the "Act 84 can be applied constitutionally, and that for the most part, the fair share fee deduction program implemented by AFSCME Council 13 comports with" the constitutional requirements set forth in Chicago Teachers Union, Local No. 1 v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Nonetheless, it denied all of the parties' motions on the ground that there existed a genuine issue of material fact as to whether the financial data set forth in the notice sent to nonmembers in August 1988 had been properly verified as required by Hudson. The Court ordered that a hearing be held "to receive evidence on the sole remaining issue remaining in this matter: whether the expense figures for AFSCME International have been verified by an independent auditor."
 
 
 9
 On December 11, 1989, after the hearing, the district court concluded that "the breakdown of chargeable and non-chargeable expenses [for 1988-89] ... were not subjected to verification by an independent auditor as required by Hudson." 727 F.Supp. 163, 166 It further noted "that Hudson was violated because AFSCME International's Special Reports were prepared after the notices to nonmembers were sent." For this constitutional violation, the district court awarded plaintiffs nominal damages in the amount of $1.00 apiece. The court also concluded that it could not, at that time, order a rebate of any of the collected fees because even though the breakdown of expenses was not verified, "[t]he figures may indeed be accurate." Id. at 168. It issued an order permitting defendants and plaintiffs to submit audits and evidentiary materials for the purpose of determining whether the expense figures contained in the notice were in fact accurate. Id. at 169.
 
 
 10
 After reviewing the submissions of the parties, the district court accepted the conclusion of the defendants' auditor that "the schedules of expenses ... present fairly, in all material respects, the expenses ... and the allocation between chargeable and nonchargeables expenses...." App. at 1301. It then determined that plaintiffs were only entitled to the nominal damages of $1.00 apiece. 727 F.Supp. 163.
 
 
 11
 In response to plaintiffs' motion for the entry of final judgment, the district court entered final judgment consistent with its prior rulings. Plaintiffs filed a timely notice of appeal from that order.
 
 
 12
 The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (1988). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (1988). Our review of all issues is plenary.
 
 II. DISCUSSION
 
 13
 A. The Facial Constitutional Challenges to the Act
 
 
 14
 We must decide facial federal constitutional challenges by plaintiffs to subsections (d) and (g) of the Act.
 
 
 15
 1. The Commonwealth's Obligation to Deduct Fees
 
 
 16
 Plaintiffs challenge the last sentence in § 575(d) on the ground that it requires public employers to make unconstitutional deductions of fair share fees. To analyze this contention, it is necessary to place the challenged sentence within the relevant statutory context. Thus, we set forth both subsections (c) and (d) of § 575.
 
 
 17
 (c) To implement fair share agreements ... the exclusive representative shall provide the public employer with the name of each nonmember who is obligated to pay a fair share fee, the amount of the fee that he or she is obligated to pay and a reasonable schedule for deducting said amount from the salary and wages of such nonmember. The public employer shall deduct the fee in accordance with said schedule and promptly transmit the amount deducted to the exclusive representative.
 
 
 18
 (d) As a precondition to the collection of fair share fees, the exclusive representative shall establish and maintain a full and fair procedure, consistent with constitutional requirements, that provides nonmembers, by way of annual notice, with sufficient information to gauge the propriety of the fee and that responds to challenges by nonmembers to the amount of the fee. The procedures shall provide for an impartial hearing before an arbitrator to resolve disputes regarding the amount of the chargeable fee. A public employer shall not refuse to carry out its obligation under subsection (c) on the grounds that the exclusive representative has not satisfied its obligation under this subsection.
 
 
 19
 (emphasis added).
 
 
 20
 In advancing their argument, plaintiffs assert that Hudson held that the public employer has an obligation to ensure that the union's procedures are adequate before it begins deducting fair share fees. They claim that the challenged sentence requires public employers to deduct fair share fees and transmit those fees to the exclusive bargaining representative even when the exclusive representative has failed to satisfy the constitutional requirements set forth in Hudson. They therefore maintain that since the sentence requires the public employer to make unconstitutional deductions, it is facially invalid.
 
 
 21
 The defendants concede that the statute requires the exclusive representative to adopt constitutionally adequate procedures before fair share fees can be deducted. They assert, however, that the obligation of the public employer to deduct and transmit the fee pursuant to § 575(d) can be applied in a valid manner, thus negating a facial attack.
 
 
 22
 As a general matter this court "will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently with the Constitution." Robinson v. State of New Jersey, 806 F.2d 442, 446 (3d Cir.1986). This same principle applies when a part of statute is challenged on "facial" grounds. See, e.g., United States v. Grace, 461 U.S. 171, 175-76, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983) (restricting review of facial challenge to one part of the statutory provision, "the display of a 'banner or devise,' " and considering whether there existed a construction of that language that avoided the constitutional question). Thus, plaintiffs' facial challenge will succeed only if the last sentence of § 575(d) "is unconstitutional in every conceivable application, or ... it seeks to prohibit such a broad range of protected conduct that it is constitutionally 'overbroad.' " Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772 (1984); see also Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985) ("lust" was neither incurably overbroad nor impossible to apply constitutionally).
 
 
 23
 Plaintiffs contend that the last sentence of § 575(d) can never be applied constitutionally. As they read the sentence, it only applies when the exclusive representative has not satisfied the precondition set forth in § 575(d), and thus only when the exclusive representative has failed to meet the constitutional requirements set forth in Hudson. Therefore, in their view, in every instance in which the public employer acts pursuant to the last sentence of § 575(d), the public employer's deduction of fair share fees is unconstitutional.
 
 
 24
 The cornerstone of plaintiffs' argument is their assertion that the last sentence only applies when the exclusive representative has failed to satisfy the precondition. Plaintiffs' position requires us first to ascertain the interpretation and construction intended by the General Assembly. See 1 Pa.Cons.Stat.Ann. § 1921(a) (Purdon 1990) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.").
 
 
 25
 On May 26, 1987, Representative Heckler proposed an amendment that would have deleted the last sentence in § 575(d), and thereby
 
 
 26
 eliminate the obligation of the public employer to make these [fair share] deductions until such time as the bargaining agent had established that the payments were consistent with the constitutional requirements which have been imposed by law.
 
 
 27
 See Legislative Journal of Pennsylvania, House of Representatives, May 26, 1987, at 713. In response to that proposal, Majority Leader Manderino, a strong supporter of the Act, stated:
 
 
 28
 I ask for a negative vote on this amendment. This amendment simply guts the procedure in a time which any objections might be made to the precondition placed upon the union by this bill. If the moneys are not collected during that period of time, they will be lost to the union, and you can imagine how many objections can be raised. Court cases, I am sure will arise. Court cases presently have the ability to enjoin collection in the event that collections should not be made.
 
 
 29
 Id. (Statement by Representative Manderino) (emphasis added); see also id. (statement by Representative Cowell that "the protections are not necessary ... and in fact they risk dragging into court in a middleman role the public employer").
 
 
 30
 We draw from these statements two points bearing directly on the applicability of the last sentence of § 575(d). First, the General Assembly intended to insulate the public employer, so far as possible, from disputes between nonmembers and their exclusive representative as to the collection of the fair share fee. The last sentence was intended to require the public employer to deduct or continue to deduct fair share fees even when nonmembers raise objections to the collection of fees. Second, the General Assembly, in our view, never intended the last sentence to apply after a determination that the collection of fair share fees was improper. We therefore prophesy that the Supreme Court of Pennsylvania would similarly interpret § 575(d).
 
 
 31
 Further, we reject plaintiffs' contention that the challenged sentence applies when it is clear that the exclusive representative has failed to satisfy the precondition, and thus the requirements in Hudson. If the last sentence of § 575(d) continued to apply after it was determined that the procedures implemented by the union do not comply with Hudson, a constitutional problem would arise with respect to those cases in which that determination had been made. It is then the Commonwealth becomes involved in the unconstitutional act and thus can be said to have violated the precondition. At that point, the action of the public employer in withholding funds violates the nonmembers' constitutional rights by deducting fair share fees.
 
 
 32
 There is nothing in the Act that prevents the exclusive representative from satisfying the constitutional requirements set forth in Hudson, and thus the precondition.[2] Moreover, the Act places no limits on the nonmembers' right to object to the deduction and collection of fees. Therefore, under the Act, there can be situations in which nonmembers file objections but a court subsequently determines that the exclusive representative has, in fact, satisfied the precondition and its constitutional obligations. In such situations, the public employer deducting or continuing to deduct fair share fees over the nonmembers' objections would not have deducted fees in violation of the Constitution. Thus, the last sentence can be applied constitutionally, and plaintiffs' facial challenge to it must be rejected.
 
 
 33
 We note that our conclusion does not conflict with the other cases cited by plaintiff, Tierney v. City of Toledo, 824 F.2d 1497 (6th Cir.1987) and Dean v. Trans World Airlines, Inc., 924 F.2d 805 (9th Cir.1991). As we read those cases and Hudson, the employer and the union must have a constitutional procedure in place before deducting fees. This does not mean, however, that the employer or the exclusive representative must in some way establish the constitutionality of the procedure before fees are deducted. Such a requirement would have the serious defect of depriving the exclusive representative of fees to which it is unquestionably entitled. Cf. Hudson, 475 U.S. at 310, 106 S.Ct. at 1078 (stating that "100% escrow ... has a serious defect of depriving the Union of access to some escrowed funds to which it is unquestionably entitled"). Moreover, such a construction would render the escrow requirement completely unnecessary. See id. (stating that the union is required to provide "an escrow for amounts reasonably in dispute while such challenges are pending") (emphasis added). Rather, the requirement that a constitutional procedure be in place before fair share fees are collected simply means that if a court subsequently determines that the procedures are constitutionally inadequate, both the public employer and the exclusive representative shall be accountable for the constitutional violation. Since we think that Hudson, Tierney, and Dean stand for no more nor less than this, we believe that our decision is in harmony with those cases.
 
 
 34
 The plaintiffs' complaint challenges Act 84 on its face for requiring an escrow of less than the entire amount of the chargeable portion of the fair share fee. In response to this lawsuit, Council 13 agreed to escrow 100% of the challenged fee. The district court ruled that this escrow arrangement satisfied the requirements of Hudson, 475 U.S. at 310, 106 S.Ct. at 1078. Hohe v. Casey, 695 F.Supp. 814, 819 (M.D.Pa.1988). While the plaintiffs raised a facial challenge to the escrow provisions of Act 84 in the proceedings below, the district court found that this facial challenge was moot under the facts of this case in light of Council 13's voluntary escrow of 100% of the challenged fees. Hohe v. Casey, 740 F.Supp. 1092, 1097-99 (M.D.Pa.1989).
 
 
 35
 The plaintiffs have not appealed this decision. Indeed, they concede in their brief that the escrow procedures implemented by Council 13 during this litigation were constitutional. See plaintiffs' brief at 15 (citing Robinson v. New Jersey, 806 F.2d 442, 446 (3d Cir.1986), cert. denied, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987) and acknowledging that the escrow "regime" established by the union is constitutional).
 
 
 36
 Because of this concession and the plaintiffs' failure to raise on appeal a facial constitutional challenge to Act 84's escrow provisions, we need not address that issue.
 
 2. Arbitration and Section 1983 Actions
 
 37
 Plaintiffs also raise a facial challenge to § 575(g). Although plaintiffs base their facial attack on numerous grounds, we need only consider their contention that subsection (g) imposes an unenforceable exhaustion requirement.
 
 
 38
 We believe that plaintiffs' facial challenge to subsection (g) requires an examination of subsections (e) and (f) as well, thus we set forth all three provisions.
 
 
 39
 (e) Within forty (40) days of transmission of notice under subsection (d), any nonmember may challenge as follows:
 
 
 40
 (1) to the propriety of the fair share fee; (2) to the payment of the fair share fee for bona fide religious grounds.
 
 
 41
 (f) Any objection under subsection (e) shall be made in writing to the exclusive representative and shall state whether the objection is made on the grounds set forth in (e)(1) or (e)(2).
 
 
 42
 (g) When a challenge is made under subsection (e)(1), such challenge shall be resolved along with all similar challenges by an impartial arbitrator.... The decision of the impartial arbitrator shall be final and binding.
 
 
 43
 As plaintiffs interpret these subsections, constitutional disputes by objectors must be resolved in final and binding arbitration. This, they claim, is inconsistent with the Supreme Court's jurisprudence concerning exhaustion of state administrative remedies in actions brought under 42 U.S.C. § 1983.
 
 
 44
 Neither of the defendants denies plaintiffs' contention that the Act requires that challenges to the propriety of the fair share be arbitrated. Rather, in defense of subsection (g), Council 13 asserts that challenges "to the propriety of the fair share fee" are not constitutional challenges, see Council 13's brief at 23, and the Commonwealth's argument seems to assume as much. Moreover, both defendants concede that the General Assembly could not bar nonmembers from asserting, in the first instance, federal constitutional claims in state or federal court. See Council 13's brief at 23-24; Commonwealth's brief at 20.
 
 
 45
 As we read the parties' arguments, plaintiffs' challenges to § 575(g) require us to decide two issues. First, whether challenges to the propriety of the fair share fee under § 575(e)(1) are constitutional challenges. Second, whether subsections (e)-(g) require arbitration of challenges to the propriety of the fair share fee. We first consider whether "propriety" challenges are constitutional challenges.
 
 
 46
 Initially, the Act distinguishes among three types of challenges. Subsection (e) states that a nonmember "may challenge" either "the propriety of the fair share fee" or "the payment of the fair share fee for bona fide religious grounds." Subsection (d), on the other hand, acknowledges that nonmembers may also raise challenges "to the amount of the chargeable fee," and imposes upon the union an obligation to provide for arbitration of those challenges. Specifically, subsection (d) provides as follows:
 
 
 47
 As a precondition to the collection of fair share fees, the exclusive representative shall establish and maintain a full and fair procedure, consistent with constitutional requirements, that provides nonmembers, by way of annual notice, with sufficient information to gauge the propriety of the fee and that responds to challenges by nonmembers to the amount of the fee. The procedures shall provide for an impartial hearing before an arbitrator to resolve disputes regarding the amount of the chargeable fee.
 
 
 48
 (emphasis added).
 
 
 49
 Since the Act draws a distinction among the three types of challenges, so too must we.[3] Thus, plaintiffs' challenge to subsection (g) requires us to ascertain the meaning of "propriety" as employed by the General Assembly. If a propriety attack includes constitutional challenges, then § 575(g) requires a dissenter to submit a § 1983 claim to arbitration without any provision for judicial review.
 
 
 50
 To perform this task we begin with the common usage of "propriety," see 1 Pa.Cons.Stat.Ann. § 1903 (Purdon 1990), and then turn to the Supreme Court's decision in Hudson. We believe our reliance on Hudson is justified because the Act was drafted in direct response to that decision. See, e.g., Legislative Journal of Pennsylvania, House of Representatives, May 26, 1987, at 713 (statement of Representative Cowell noting that the protections provided to nonmembers in Hudson were in the legislation).
 
 
 51
 The common meaning of "propriety" is "[t]he quality or state of being proper or fitting." Webster's Third New International Dictionary (ed. 1968). Thus, a challenge to the propriety of a fair share fee presents a question as to whether the fee is of a proper kind or fitting under the circumstances. Hudson gives content to this definition.
 
 
 52
 The paradigm instances of "propriety" challenges were outlined in Hudson when the Court said:
 
 
 53
 The Union should not be permitted to exact a service fee from nonmembers without first establishing a procedure which will avoid the risk that their funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining.
 
 
 54
 475 U.S. at 305-306, 106 S.Ct. at 1075 (emphasis added). As we read Hudson, the best examples of propriety challenges are those wherein a nonmember claims that a union has charged agency fees that are not based on expenses related to collective bargaining, contract administration, and dispute resolution or other germane activities.
 
 
 55
 The Hudson court did not decide what procedures govern a challenge to the portion of the agency fee attributable to nongermane, nonideological activities which implicate no first amendment interest. 475 U.S. at 304, n. 13, 106 S.Ct. at 1074, n. 13. Nor do we. However, we do exclude such claims from the meaning of the term "propriety" challenges.
 
 
 56
 From these paradigm instances, we infer that challenges to the propriety of a fee are objections that involve nonmembers' first amendment interest in not being forced to contribute for nonchargeable activities. Such challenges do not focus on the amount of the chargeable fee. Instead, they are based on a claim that the nonmember is being compelled to subsidize a union's expenditures on activities that are not germane or not justified by the government's vital interests in labor peace and eliminating "free riders", or that the fee is a significant additional burden on free speech. See Lehnert v. Ferris Faculty Ass'n, --- U.S. ----, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572 (1991) ("chargeable activities must (1) be 'germane' to the collective bargaining process; (2) be justified by the government's vital interest in labor peace and avoiding 'free riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop"). Therefore, we conclude that challenges "to the propriety of the fair share fee" under subsection (e)(1) of the Act are, simply stated, challenges to the chargeability of an activity.[4]
 
 
 57
 Challenges to the chargeability of an activity, and thus attacks on the propriety of the fair share fee under subsection (e)(1), are unquestionably constitutional challenges. As the Court in Lehnert stated, the three requirements for chargeability are used "in determining which activities a union constitutionally may charge to dissenting employees." Id. (emphasis added).
 
 
 58
 We must next determine whether the Act requires objecting nonmembers to have their propriety challenges submitted to arbitration. Although subsection (e) states that nonmembers "may challenge," we do not believe the General Assembly intended that phrase to permit nonmembers to bring their propriety challenges to court. Subsection (e) states that nonmembers "may challenge as follows" and then offers two possible challenges. We read this language to mean that subsection (e) provides nonmembers with two permissible types of challenges, not with alternative avenues for raising propriety challenges. Moreover, the latter reading would be inconsistent with subsections (f) and (g). Subsection (f) provides that "[a]ny objection under subsection (e) shall be made in writing ..." and the clear and unambiguous language of subsection (g) states that "[w]hen a [propriety] challenge is made under subsection (e)(1), such challenge shall be resolved ... by an impartial arbitrator...." Thus, we must conclude that subsection (g) was intended to require all nonmembers' challenges to the propriety of the fair share fee to be resolved in arbitration.
 
 
 59
 Although the Act does not explicitly provide that challenges to the propriety of the fair share fee shall be resolved before nonmembers bring court actions, it would be absurd to suppose that the General Assembly intended to require arbitration but did not intend to require it before nonmembers brought their challenges to court. Consequently, even if we were to ignore the "final and binding" language of subsection (g), we would read subsections (e)-(g) as requiring nonmembers to exhaust nonjudicial remedies. Thus, the first sentence in subsection (g) is inconsistent with the Supreme Court's decision in Patsy v. Board of Regents of Florida, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) ("exhaustion of state remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); see also Felder v. Casey, 487 U.S. 131, 148, 108 S.Ct. 2302, 2312, 101 L.Ed.2d 123 (1988) (civil rights actions "are judicially enforceable in the first instance " in the courts) (quotation omitted). We hold, therefore, that the first sentence in § 575(g) is constitutionally unenforceable.
 
 
 60
 In reaching our conclusion, we think it is important to respond to Council 13's contention that "there would be no need for the provision in Hudson for arbitration if employees are constitutionally authorized to adjudicate in the first instance the propriety of fee disputes in the federal courts." Council 13's brief at 20. As we read Hudson, it concluded only that unions must provide nonmembers with an alternative to litigation. See Hudson, 475 U.S. at 307 & n. 19, 106 S.Ct. at 1076 & n. 19 ("we now conclude that such a requirement [an internal union remedy] is necessary"). It did not conclude that states or unions could require nonmembers to arbitrate constitutional issues.
 
 
 61
 Moreover, contrary to Council 13's assertion, the alternative of a union procedure whereby nonmembers can obtain a "reasonably prompt decision by an impartial decisionmaker" does have a purpose. For, as stated in Railway Clerks v. Allen, "[i]f a union agreed upon a formula for ascertaining the proportion of political expenditures in its budget, and made available a simple procedure for allowing dissenters to be excused from having to pay this proportion of moneys due from them under the union-shop agreement, prolonged and expensive litigation might well be averted." 373 U.S. 113, 123, 83 S.Ct. 1158, 1164, 10 L.Ed.2d 235 (1963) (emphasis added).
 
 
 62
 Finally, plaintiffs have challenged the second sentence in subsection (g) that makes the decision of the impartial arbitrator "final and binding." We believe that this sentence is wholly dependent upon the first, and thus it is rendered meaningless and unenforceable by our decision invalidating the first sentence. Therefore, we need not address plaintiffs' arguments attacking the final and binding language of subsection (g), because subsection (g) is invalid in its entirety.
 
 3. Severability
 
 63
 Since we have invalidated § (g) of Act 84, we are called upon to determine whether this provision is severable from the balance of the Act. The Act includes a severability clause and declares it "to be the legislative intent that this Act would have been adopted had ... invalid provisions not been included." See § 3 of Act 1988, July 13, P.L. 493, No. 84. Therefore, considering the Act without the provision we have invalidated, we conclude that the Act would have been adopted even without the invalid provision.
 
 
 64
 B. Notice and the "Local Presumption"
 
 
 65
 Pursuant to § 575(d), Council 13 was required to provide nonmembers "with sufficient information to gauge the propriety of the fee." This language is identical to the obligation placed upon unions in Hudson. 475 U.S. at 306, 106 S.Ct. at 1075. Plaintiffs contend that
 
 
 66
 [t]he only information about the disbursements of Council 13's over 300 local affiliates in its notice to nonmembers was that they totaled $1.46 million and that Council 13 "assumed in its calculations ... that the percentage of the expenses of these local unions which are chargeable to fair share fee payers is at least as great as the percentage of chargeable expenses of AFSCME Council 13."
 
 
 67
 This information, they argue, did not permit nonmembers to gauge the propriety of the fee, and thus the Commonwealth deducted and Council 13 collected fair share fees in violation of both § 575(d) and the Constitution.[5]
 
 
 68
 The district court believed that "[s]o long as the calculation of the fee is explained in the notice, and the fee payer is able to make a general challenge to the fee, the Hudson, requirements are satisfied." App. at 922. It thus determined that because Council 13 disclosed "how the fee was calculated," Council 13's disclosure was constitutionally adequate.
 
 
 69
 In Hudson, the Supreme Court stated that nonmembers must be given sufficient information to gauge the propriety of the fee because "[l]eaving the nonunion employees in the dark about the source of the agency fee--and requiring them to object in order to receive information--does not adequately protect the careful [first amendment] distinctions drawn in Abood." Hudson, 475 U.S. at 306, 106 S.Ct. at 1075 (citing Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)). It went on to determine that under the circumstances, the union failed to provide nonmembers with sufficient information because there was no "adequate disclosure of the reasons why they were required to pay their share...." Hudson, 475 U.S. at 307, 106 S.Ct. at 1076.
 
 
 70
 We believe that under Hudson the constitutional adequacy of the notice is not, as the district court seems to have believed, an issue as to whether the union explained "how the fee was calculated." Even in Hudson the union provided nonmembers with that information. See id. at 307, 106 S.Ct. at 1076 (union disclosed that it calculated the chargeable fee by subtracting nonchargeable expenses from total union expenditures). Instead, the issue is whether the notice provided nonmembers with information sufficient to gauge the propriety of the fee, and thus whether the notice provided nonmembers with sufficient information to determine whether they were only being compelled to contribute to chargeable activities.
 
 
 71
 The notice sent by Council 13 to nonmembers did not disclose the affiliated locals' "major categories of expenses" nor was there any assertion that the locals' categories of expenses mirrored those of Council 13. Moreover, although the notice stated that Council 13 had assumed that affiliated locals' percentage of chargeable expenses was at least as great as its own, the notice offered no reason or explanation why Council 13 was justified in making this assumption. Finally, by choosing not to disclose any information concerning the affiliated locals' expenditures, nonmembers were denied all information concerning their respective locals' payments to Council 13 or the parent organization, AFSCME International.
 
 
 72
 While "[t]he Union need not provide nonmembers with an exhaustive and detailed list of all of its expenditures," see Hudson, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18, we conclude that the notice sent by Council 13 failed to provide nonmembers of the affiliated locals with sufficient information to gauge the propriety of the fee. By making the assumption and offering no explanation or justification for it, Council 13 failed to provide nonmembers with any information identifying the major categories of expenses of the affiliated locals. Moreover, regardless of how detailed Council 13's disclosure was of its own expenses, by disclosing only its own expense categories and the assumption, Council 13 failed to inform nonmembers of the amount their locals contributed to Council 13 and the International, let alone "a showing that none of it was used to subsidize activities for which nonmembers may not be charged, or an explanation of the share that was so used...." Id. Compare Weaver v. University of Cincinnati, 942 F.2d 1039, 1046 (6th Cir.1991) and Tierney v. City of Toledo, 917 F.2d 927, 937 (6th Cir.1990) (local union failed to disclose to nonmembers the use of funds sent to affiliated state and national parent labor unions).
 
 
 73
 We conclude that the notice sent by Council 13 left nonmembers in the dark about the portion of the fee attributable to chargeable expenses and placed them in the position of having to object to obtain the information needed to gauge the propriety of the fee. Thus, we believe that the notice sent by Council 13 failed to meet the constitutional standard set forth in Hudson. Id. at 306, 106 S.Ct. at 1075 (stating that Union cannot send notice that requires nonmembers "to object in order to receive information"). We will therefore remand this matter to the district court to determine the appropriate remedy for Council 13's failure to send constitutionally adequate notice. Hudson, 475 U.S. at 309 n. 22, 106 S.Ct. at 1077 n. 22 ("In view of the fact that plaintiffs established a constitutional violation ... the task of fashioning a proper remedy is one that should be performed by the District Court after all interested parties have had an opportunity to be heard.").
 
 C. The Indemnification Provision
 
 74
 We next address the plaintiffs' contention that the indemnification clause in the collective bargaining agreement between Council 13 and the Commonwealth is void as against federal public policy because it permits the Commonwealth "to escape responsibility for protecting its employees' rights...." Plaintiffs' brief at 26. The district court determined that it was unnecessary to decide this issue because, as we read the district court's opinion, it found no independent legal consequences flowing from the indemnification clause in the collective bargaining agreement.
 
 
 75
 We find ourselves in disagreement with the ruling of the district court that it need not decide this issue. We say so because we think the theory advanced by the plaintiffs' attack on the clause raises a cognizable legal issue.
 
 
 76
 We now turn to the merits of their attack on the indemnification clause in the Master Agreement. Article 4, section 7, of the Master Agreement between the Commonwealth and Council 13, wherein the Commonwealth agrees to deduct and transmit fair share fees to Council 13, provides:
 
 
 77
 The Union shall indemnify and hold the Employer harmless against any and all claims, suits, orders, or judgements brought or issued against the Employer as a result of the action taken or not taken by the Employer under the provisions of this Article.
 
 
 78
 App. at 32.
 
 
 79
 Plaintiffs request that we follow the Sixth Circuit in holding that "[i]ndemnification clauses in collective bargaining agreements which purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy." Cramer v. Matish, 924 F.2d 1057 (6th Cir.1990) (table), aff'g in part, rev'g in part, 705 F.Supp. 1234 (W.D.MI.1988); see also Jordan v. City of Bucyrus, 754 F.Supp. 554, 559 (N.D.Ohio, 1991).
 
 
 80
 Plaintiffs concede that the indemnitees named in the agreement, the Commonwealth and the high executive officials here sued in their official capacity, are immune from damages. Indeed, the plaintiffs did not seek damages against the Commonwealth. However, it is clear that a court may enjoin the deduction of fees upon a proper showing by nonmembers. Thus, plaintiffs claim is simply that "[u]nless invalidated, the indemnification clause will not only have encouraged a constitutional violation, but will allow the Commonwealth to escape ... liability" for costs and attorney fees under 42 U.S.C. § 1988. Plaintiffs' brief at 27; see Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 2466-67, 105 L.Ed.2d 229 (1989).
 
 
 81
 The indemnification clause does not immunize the Commonwealth. The Commonwealth may be called upon to defend the deduction of fees and may be enjoined from imposing the fair share fees on nonmembers when it is determined that the exclusive representative has not complied with the constitutional requirements. Nor does the clause explicitly provide that Council 13 will indemnify the Commonwealth for the costs or fees involved in defending any claim based upon its deduction of fair share fees. Compare Stamford Board of Education v. Stamford Education Ass'n, 697 F.2d 70 (2d Cir.1982) (union agreeing to hold "Board harmless for any and all judgments, costs, and fees involved in defending any claim against the Board based on any claimed sex discrimination").
 
 
 82
 Furthermore, even if Council 13 would indemnify the Commonwealth for such costs and fees under the clause, we do not believe that this should matter. Nonmembers will be able to collect costs and fees. Moreover, the exclusive representative, upon whom most obligations fall, has a significant incentive to ensure that its procedures comply with the Constitution. Failure to do so may result in its being unable to retain a portion of the fair share fee. Thus, we hold that the invalidation of the indemnification clause is not required by the First Amendment. But see Cramer, supra; Jordan, 754 F.Supp. at 557.
 
 D. Calculation of the Chargeable Fee
 
 83
 Plaintiffs raise three challenges to the fee they were charged as nonmembers. First, they contend that it is unconstitutional because the exclusive representative cannot charge nonmembers anything other than a uniform fee. Next, they argue that Council 13's standard for determining whether an expense was chargeable was overbroad. Finally, they claim that Council 13's method of computing total chargeable expenses was unconstitutional.
 
 1. Uniform Fee
 
 84
 Plaintiffs contend that it is unconstitutional for Council 13 to charge nonmembers a fair share fee that is a percentage of their income. They assert that in light of the first amendment concerns involved, Hudson 's requirement of careful tailoring prohibits the exclusive representative from charging nonmembers anything other than a uniform fee. Hudson, 475 U.S. at 303, 106 S.Ct. at 1074. Plaintiffs cite as support for their position the Supreme Court's decision in Communications Workers v. Beck, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988).
 
 
 85
 Initially, we note that plaintiffs' reliance on Beck is misplaced. In that case, the Supreme Court did indeed recognize a uniformity requirement, but it did so on the basis of the language in the National Labor Relations Act and the Railway Labor Act requiring "uniform" charges. See id. at 753 n. 8, 108 S.Ct. at 2652 n. 8 ("[c]onstruing both § 8(a)(3) and § 2, Eleventh as permitting the collection and use of only those fees germane to the collective bargaining does not ... read the term "uniform" out of the statutes"). Since the Act under consideration does not include a uniformity requirement, Beck is not controlling.[6]
 
 
 86
 As we understand plaintiffs' position, they contend that even if Council 13 does not exact a fee for nongermane activities, its procedure of collecting fees as a percentage of income is unconstitutional. Their argument may be paraphrased as follows. Because higher income nonmembers receive no greater benefit from collective bargaining than lower income nonmembers, requiring higher income nonmembers to pay a greater amount than lower income nonmembers is equivalent to compelling them to pay more than their pro rata share of the nonmembers' costs of collective bargaining. This extra sum, they claim, constitutes an additional burden, and thus a further impingement, on higher income nonmembers' first amendment rights. Therefore, in light of the fact that there is an alternative means of pursuing the Commonwealth's interests that is less restrictive, and actually more effective, Council 13's procedure of charging nonmembers a fee that is percentage of salary is not carefully tailored.
 
 
 87
 The plaintiffs' argument cannot be properly understood as a claim asserted on behalf of all of the class they represent. Although the plaintiffs are the certified class representatives of all nonmembers, their argument is clearly antagonistic to the interests of lower income nonmembers.
 
 
 88
 We, therefore, conclude that we should not now resolve this claim on the merits because the uniform pro rata fee urged by the plaintiffs would conflict with the interests of at least some members of the plaintiffs' class.
 
 
 89
 This conflict of interest between class members on the issue of the uniformity of the fee was not raised in the district court when the class was certified. See Hohe v. Casey, 128 F.R.D. 68 (M.D.Pa.1989). The plaintiffs' "Amended Complaint--Class Action," filed November 17, 1988, did not seek the relief of a uniform pro rata fee that the class representatives now request. App. 61-64. The plaintiffs asserted to the district court, prior to class certification, that, as representatives of the class, they had "no interests antagonistic to other employees who also have chosen not to join defendant AFSCME Council 13." App. 69.[7] In response, Council 13 and the Commonwealth defendants stated that they were "without knowledge or information sufficient to form a belief as to its truth." App. 80, 82, 88, 90. Thus, the district court certified the class without any reason to believe that a conflict existed within the class on a particular issue. Accordingly, the district court found that the requirements in Fed.R.Civ.P. 23 were met, and, specifically, the court "found no antagonistic conflict of interest between the plaintiffs and absent class members." Hohe, 128 F.R.D. at 70.
 
 
 90
 The district court's ruling was not in error. At the time of class certification, there was no conflict because the plaintiffs had not yet challenged the constitutionality of the percentage of salary method of calculating the fair share fee. They raised this issue for the first time on April 10, 1989, after the class was certified (on January 19, 1989). App. 116, 121, 126.
 
 
 91
 Nevertheless, after the issue was raised, the district court decided it on the merits rather than revisiting the earlier ruling on the certification of the class. The district court rejected the plaintiffs' argument that "the amount of each individual non-members' fees is unconstitutionally arbitrary since it is based on a percentage of gross income." Hohe v. Casey, 740 F.Supp. 1092, 1097 (M.D.Pa.1989).
 
 
 92
 Since there was no properly certified class of plaintiffs on this issue because of a conflict of interest among members of the certified class, the district court should not have ruled on the merits of the issue. We will, therefore, vacate the district court's decision on the percentage of salary method of fee calculation and remand the determination to the district court to hold a hearing to determine whether sub-classes should be certified on this issue. F.R.Civ.P. 23(a)(4).
 
 
 93
 2. Council 13's Standard for Chargeable Costs
 
 
 94
 Plaintiffs claim that Council 13's standard for a chargeable expense was "all expenses associated with ... pursuing matters affecting the wages, hours and working conditions of employees represented by AFSCME." Plaintiffs' brief at 35. They argue that the standard is constitutionally overbroad because "[a]lmost anything a public-sector union does--even support candidates--at least indirectly strengthens it in bargaining or potentially 'affects' the wages, hours, or working conditions of employees it represents." Id. at 36. They further claim that the district court erred by concluding that this challenge should be brought in arbitration.
 
 
 95
 As we understand plaintiffs' contention, they are claiming that the standard Council 13 employed for determining whether an expense was chargeable was overbroad. If plaintiffs are correct about Council 13's standard, the nonmembers were charged for certain nonchargeable activities. As we have already held, such claims are constitutional challenges to the propriety of the fair share fee. Therefore, we believe that the district court erred by refusing to consider plaintiffs' objection to the standard for a chargeable expense, and we shall address it.
 
 
 96
 Plaintiffs' interpretation of Council 13's standard is derived from a sentence in the notice sent to nonmembers. As Council 13 is quick to point out, the full statement of the standard of chargeable expense does not contain the word "all" and actually provides as follows:
 
 
 97
 As a nonmember fair share fee payer you are being charged a fair share fee which is equal to your pro rata share of expenses for activities or undertakings which are reasonably employed to implement or effectuate the duties of AFSCME as your exclusive representative. Included in the calculation of the fair share fee are expenses associated with the collective bargaining process, contract administration, and pursuing matters affecting wages, hours and working conditions of employees represented by AFSCME.
 
 
 98
 App. at 37.
 
 
 99
 This standard of a chargeable expense is consistent with the test set forth in Ellis v. Railway Clerks, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984) in which the Supreme court stated:
 
 
 100
 the test is whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as an exclusive representative of the employees in the bargaining unit.
 
 
 101
 466 U.S. 435, 448, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428 (1984); see also Keller v. State Bar of California, 496 U.S. 1, 110 S.Ct. 2228, 2236, 110 L.Ed.2d 1 (1990); Lehnert, 111 S.Ct. at 1958-59. Thus, we conclude that Council 13's standard for chargeable expenses is not unconstitutionally overbroad.[8]
 
 
 102
 3. The Method of Calculating Total Chargeable Expenditures
 
 
 103
 Plaintiffs also assert that Council 13 calculated total chargeable expenses by subtracting the total amount of nonchargeable expenses from total expenditures. They contend that this method of calculating the nonmembers' total chargeable expenses is unconstitutional.
 
 
 104
 Plaintiffs' argument is far from clear. They seem to be arguing both that Council 13's method resulted in an inappropriate advance reduction and that Council 13's methodology permitted it to shift the burden of proof on chargeability. We shall address both of these challenges.
 
 
 105
 In calculating the fair share fee, a union is required to determine an appropriate advance reduction. Subtracting the amount of nonchargeable expenses from total expenditures would yield the same advance reduction as would adding together all the chargeable expenses, but only so long as the exclusive representative considered all expenditures and used the same standard for classifying an expense as chargeable or nonchargeable. Plaintiffs do not contend that Council 13 did not review all the expenses or use the same standard at all times. Thus, as the district court stated, "[r]egardless of the method used, the amount of chargeable expenses will be the same." And consequently, so too would the advance reduction. Thus, we agree with the district court on this matter.
 
 
 106
 We also understand plaintiffs to be arguing that even if subtracting nonchargeable expenses from total expenditures yields, as a bookkeeping matter, "total chargeable expenses," that method is unconstitutional because it shifts the burden onto nonmembers to prove an expense is nonchargeable. Their reasoning seems to be the following. As a matter of constitutional law, Council 13 has the burden of proving the proportion of total chargeable expenses to total expenditures. Thus, it must prove that a challenged expense is chargeable to nonmembers. Because "it is not a truism ... that an admission of nonchargeable activities and time estimates is, by implication, competent proof of chargeable activity and time," Plaintiffs' brief at 37 (emphasis added), Council 13 could not carry its burden by showing that certain expenses were nonchargeable. Since this is exactly what Council 13's method for calculating total chargeable expenses permitted it to do, plaintiffs conclude that the method is unconstitutional.
 
 
 107
 We think that plaintiffs' attack on Council 13's methodology misperceives the relationship between an exclusive representative's calculation of the chargeable fee and its burden when responding to challenges to amount and propriety. "[B]ecause the union possess[es] the facts and records from which the proportion of political to total union expenditures can be reasonably calculated, basic considerations of fairness compel that they, not the individual employees, bear the burden of proving such proportion". Hudson, 475 U.S. at 306, 106 S.Ct. at 1075. However, even if we agreed with plaintiffs that Council 13 used the method suggested, we see nothing that causes us to believe that Council 13 used that method to shift the burden onto nonmembers. Therefore, we reject plaintiffs' contention that Council 13's method was unconstitutional.
 
 E. Verification
 
 108
 The plaintiff challenges the validity of the notice on the ground that it was not adequately verified by an independent audit of the categories of chargeable expenses, as well as of the amount of expenses in all major categories.
 
 
 109
 Under Hudson, Council 13 was required to send nonmembers notice that included "the major categories of expenses, as well as verification by an independent auditor." Hudson, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. On December 11, 1989, the district court determined that "the breakdown of chargeable and non-chargeable expenses ... were not subjected to verification by an independent auditor as required by Hudson." App. at 1174.[9] It went on to state that "[h]aving found a violation of plaintiffs' first amendment rights in the unions' Hudson procedure, we must determine an appropriate remedy." App. at 1178 (emphasis added). It concluded that
 
 
 110
 plaintiffs are entitled to an award of 1.00 apiece because they established that constitutionally inadequate procedures were used in imposing the fair share fee. It is unclear, however, whether plaintiffs are further entitled to a partial rebate. The defect was only in the failure to verify the union's figures with an independent audit. The figures may indeed be accurate in which case plaintiffs are not entitled to a refund and as stated only nominal damages would be appropriate.
 
 
 111
 Id. at 1180-81 (emphasis added).
 
 
 112
 The district court determined that Council 13's notice failed to contain a verification by an independent auditor. No information subsequently submitted to the court after the fees had been collected could rectify that aspect of the notice because the purpose of requiring the verification in the notice is to give the nonmembers some prior assurance that the fee was properly calculated. When nonmembers do not receive that assurance, their constitutional rights are violated under Hudson, and they are at least entitled to nominal damages of $1.00, see Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978). Therefore, we affirm the district court's award of $1.00 nominal damages to each nonmember.
 
 
 113
 We note that the district court seems to have thought that nonmembers might also be entitled to actual damages for this constitutional violation, and thus ordered the parties to submit supplemental materials regarding the accuracy of the fee. We think, however, that this ruling was erroneous. Nonmembers suffer actual damages when an exclusive representative collects a fee that is more than their proportionate share of the total chargeable costs of collective bargaining. Since the issue of whether the notice contains a verification is irrelevant to whether the exclusive representative properly calculated the proportionate share of total chargeable expenses, the failure of the notice to contain a verification cannot give rise to actual damages. Consequently, there was simply no reason for the district court to hold subsequent proceedings to determine whether plaintiffs were entitled to additional relief for that constitutional violation.
 
 
 114
 Our conclusion that plaintiffs were only entitled to nominal damages for the constitutional violation does not mean that plaintiffs are not entitled to challenge the accuracy of the fee and to seek damages in the form of a rebate for any improperly collected amount. To obtain a rebate, plaintiffs must challenge the fee, not the verification. Plaintiffs did, as the district court stated, attack "the nature, extent, accuracy and thoroughness of the accountant's audit and opinion ..." App. at 1302, and this we believe may be construed as an attack on the fee. This attack could involve challenges to Council 13's classification of certain expenses as chargeable or challenges to the amount of the chargeable fee. Therefore, the heart of plaintiffs' verification argument, as well as its attacks on Council 13's standard of chargeability and its methodology for calculating total chargeable expenses, is really that Council 13 included expenses that were not chargeable or overestimated the amount of the fee.
 
 
 115
 The foregoing questions will need to be determined on remand along with the question of whether the percentage amount Council 13 assumed its affiliate locals spent for chargeable items is accurate. Moreover, because we have invalidated the "local presumption" in the notice that Council 13 issued with respect to 1989-90 fees, the district court on remand must determine an appropriate remedy for this independent failure to give a notice that contains the information the Supreme Court has determined the First Amendment requires. Hudson, 475 U.S. at 309 n. 22, 106 S.Ct. at 1077 n. 22.
 
 IV. Conclusion
 
 116
 A judgment consistent with this opinion will be issued.
 
 
 
 [1]
 A "fair share fee" or "agency shop" agreement is an agreement under which the employer deducts from the pay of employees represented by, but not members of a union, fees that are transmitted to the union to pay the nonmembers' proportionate share of the costs of collective bargaining
 
 
 [2]
 We note that the "precondition" does not explicitly require the exclusive representative to establish and maintain an escrow account as required by Hudson, 475 U.S. at 310, 106 S.Ct. at 1077. See § 575(d). Although subsection (i) of the Act requires the exclusive representative to escrow funds, that provision is not part of the "precondition" and it only applies when nonmembers challenge "the propriety of the fair share fee" or "the payment of the fair share fee for bona fide religious grounds." Nonetheless, nothing in the precondition precludes the exclusive representative from escrowing amounts reasonably in dispute, and we cannot say that this is not what the General Assembly intended by requiring a "procedure ... that responds to challenges by nonmembers to the amount of the fee." § 575(d)
 
 
 [3]
 Council 13's notice also advises nonmembers of a procedure for challenging "the amount of the fair share fee" that differs from the statutory procedure for challenging the propriety of the fair share fee
 
 
 [4]
 We note that this reading of challenges "to the propriety of the fair share fee" leaves room to distinguish such challenges from both challenges to the amount of a chargeable fee and challenges to the payment of the fair share fee for bona fide religious grounds. A nonmember can challenge the amount of a chargeable fee without challenging the chargeability of the activity
 
 
 [5]
 Plaintiffs request this court to follow Cramer v. Matish, 924 F.2d 1057 (6th Cir.1990) (table), aff'g. in part, rev'g. in part, 705 F.Supp. 1234 (W.D.MI.1988) and Lowary v. Lexington Local Bd. of Educ., 903 F.2d 422 (6th Cir.1990). We believe, however, that those cases are distinguishable because they involved true presumptions that resulted in nonmembers having the burden of proving an expense was nonchargeable. Council 13's assumption does not, nor could it, shift the burden in proceedings challenging the fair share fee. See Hudson, 475 U.S. at 306 n. 16, 106 S.Ct. at 1075 n. 16 ("nonmembers's 'burden' is simply the obligation to make his objection known")
 
 
 [6]
 Council 13 relies, as did the district court, on Klemens v. Air Line Pilots Ass'n, 736 F.2d 491 (9th Cir.1984) and Bagnall v. Air Line Pilots Ass'n, 626 F.2d 336 (4th Cir.1980) which held that setting union security charges as a percentage of income was permissible even though the relevant statute provision, section 2, Eleventh of the Railway Labor Act, included a uniformity requirement. Although Beck is not controlling, we believe that Beck casts serious doubt on the holding of these cases, and thus we reject any reliance placed upon them by Council 13
 
 
 [7]
 The plaintiffs represented further in their complaint that "questions of law and fact common to the members of the class predominate over any questions affecting only members ... inasmuch as the individual class members are deprived of the same rights by defendants' actions, and differ only in immaterial aspects of their factual situations." App. 70 (Emphasis added.)
 
 
 [8]
 Our conclusion should not be read to suggest that plaintiffs cannot challenge Council 13's classification of certain expenses. We conclude only that the standard set forth in the notice is not logically inconsistent with the Supreme Court's test for chargeable expenses
 
 
 [9]
 Council 13 has not appealed the district court's ruling that the independent auditor must verify the breakdown of chargeable and nonchargeable fees, and thus we have no occasion to review that determination