Marsha OTTO, F. Naylor Emory, Dennis A. Erb, Robert K. Gilbert, James W. Lossel, Barbara J. McCalley and Wesley S. Semple, Plaintiffs,

v.

PENNSYLVANIA STATE EDUCATION ASSOCIATION–NEA, National Education Association, Grove City Area Association and Shaler Area Education Association, Defendants.

Civil Action No. 1:CV–96–1233.

United States District Court, M.D. Pennsylvania.

Jan. 13, 1997.

Milton L. Chappell, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, W. James Young, Sunbury, PA, for Marsha Otto, F. Naylor Emory, Dennis A. Erb, Robert K. Gilbert, James W. Lossell, Barbara J. McAlley, Wesley S. Semple.

Richard E. Burridge, PA State Education Association, Harrisburg, PA, Robert H. Chanin, John M. West, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Mark P. Widoff, Pennsylvania State Education Association, Harrisburg, PA, Mark P. Widoff, Harrisburg, PA, for Pennsylvania State Education Association–NEA, National Education Association, Grove City Area Education Association, Shaler Area Education Association.

### MEMORANDUM

CALDWELL, District Judge.

This is an action under 42 U.S.C. § 1983, challenging certain procedures employed in the collection of "fair share" fees by the Defendants, the National Education Association ("NEA"), the Pennsylvania State Education Association ("PSEA"), and the Shaler Area Education Association ("SAEA"). Before us is a partial motion to dismiss under Fed.R.Civ.P. 12.

### I. Background

Defendants are affiliated national, state and local teachers' unions. Plaintiffs are seven nonunion public school employees, who challenge certain aspects of Defendants' collection of fair share fees for the 1994–95 and 1995–96 academic years.

The Pennsylvania Fair Share Act, 71 Pa. Stat. § 575 (1990), authorizes public employees' unions to collect fair share fees from nonmembers to help defray the cost of the union's exclusive bargaining representation of all employees. *Id.* § 575(b). Fair share fees are calculated as the dues paid by union members, less the amounts not employed by the union in its role as exclusive representative. *Id.* § 575(a). The fair share fee is thus a percentage of the full fee paid by union members.

■ Because the mandatory collection of fair share fees from nonmembers represents some degree of impairment of the nonmembers First Amendment rights, the union must provide nonmembers with certain procedural safeguards. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 301–03, 106 S.Ct. 1066, 1073–74, 89 L.Ed.2d 232, 243–45 (1986). The nonmember has a right to object to any portion of his or her fees being spent on political activities unrelated to the union's duties as exclusive bargaining representative. *Id.* at 301–02, 106 S.Ct. at 1073, 89 L.Ed.2d at 244. The union must also provide some opportunity for a nonmember who objects to the calculation of the fee to have his or her objections resolved by "a reasonably prompt decision by an impartial decisionmaker." *Id.* at 307, 106 S.Ct. at 1076, 89 L.Ed.2d at 247.

Each year, Defendants each make a separate calculation of the percentage of their expenses which will be applied to collective bargaining representation. This percentage is then used to determine the fair share fee to be paid by nonmembers. NEA's and PSEA's calculations are verified by independent audit, but SAEA's calculations are not.

Nonmembers receive a "Notice to Fair Share Feepayers" each year, detailing the fair share fees and the underlying calculations. (Complaint, ex. A). The Notice provides that nonmembers may challenge[1] the calculation of the fair share fee, by notifying PSEA in writing. Such disputes are resolved through binding arbitration. (Complaint, ex. A at 18).

Plaintiffs received the Notice to Fair Share Feepayers for the years in question, and paid their fair share fees without invoking the challenge procedure.

Plaintiffs, through their amended complaint, now allege that Defendants have failed to provide all of the required proce-

---

[1]. The parties engage in some debate about possible distinctions between the terms "challenge" and "object." While we regard Defendants' observation that the Supreme Court uses these terms interchangeably in *Hudson* as well taken, we will use "challenge" in referring to the procedure established for disputing Defendants' calculations, as that is the term used in the "Notice to Fair Share Feepayers." We do not view this issue as dispositive.

dural safeguards. Specifically, Plaintiffs allege: (1) that SAEA's failure to have its fair share fee calculations independently audited violates the constitutional limitations on fair share fees; (2) that Defendants' arbitration procedure fails to provide a reasonably prompt resolution of fee disputes by an impartial decisionmaker; and (3) that Defendants' calculation of fair share fees improperly applied fees to union activities not reasonably related to representation.

Defendants have moved to dismiss Plaintiffs' second and third claims, arguing that Plaintiffs' failure to make use of proscribed procedures to challenge the fair share fees at the time they are assessed leave Plaintiffs without standing to sue. The Magistrate Judge issued a Report and Recommendation, recommending that we deny Defendants' motion. All parties have filed objections to the Magistrate's Report.

## II.  *The Standing Requirement*

The judicial power of the federal courts is limited to the adjudication of "cases" and "controversies." U.S. Const. Art. III § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2135–36, 119 L.Ed.2d 351, 363–64 (1992); *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 625 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 210 (1996). This limitation means that for a federal court to have jurisdiction to entertain a case, the plaintiff must have standing to sue. *Id.; Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364.

There are three elements to "the irreducible constitutional minimum of standing":

(1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";

(2) "there must be a causal connection between the injury and the conduct complained of"; and

(3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*UPS,* 66 F.3d at 625–26 (quoting *United States v. Hays,* 515 U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635, 642 (1995)). The plaintiff bears the burden of pleading facts sufficient to satisfy these requirements. *Hays,* 515 U.S. at ——, 115 S.Ct. at 2435, 132 L.Ed.2d at 642; *see also Lujan,* 504 U.S. at 561, 112 S.Ct. at 2137, 119 L.Ed.2d at 365 (plaintiff also bears the burden of proof at the summary judgment stage).

## III.  *Discussion*

Defendants argue that Plaintiffs lack standing to challenge the timeliness of the arbitration procedure, or the propriety of the calculation of the fair share fee, because of their failure to make use of the fee challenge procedure at the time the fair share fees were assessed. Defendants do not dispute Plaintiffs' standing to raise SAEA's failure to have its fee calculations independently audited.

### A.  Standing to Challenge the Timeliness of Arbitration

█ Plaintiffs allege that the arbitration procedure established by Defendants fails to provide a "reasonably prompt decision by an impartial decisionmaker," as required by the Supreme Court in *Hudson.* 475 U.S. at 307, 106 S.Ct. at 1076, 89 L.Ed.2d at 247. Defendants have moved to dismiss this claim, arguing that because Plaintiffs did not take advantage of the challenge process, by invoking the arbitration procedure, they lack standing.

Plaintiffs have not alleged facts sufficient to establish standing on this claim. Because they did not utilize the challenge procedure, they are unaffected by the timeliness (or lack thereof) of the arbitration process, and therefore can show no "injury in fact." *UPS,* 66 F.3d at 626.

Plaintiffs argue that the *Hudson* requirements are preconditions to the collection of fair share fees; any alleged flaws in the procedural safeguards established by Defendants, according to Plaintiffs, render the fee collection unconstitutional, and give all nonmembers standing to sue. This reasoning, however, would do away with any standing requirement in fair share fee cases, a conclusion that is not suggested by the Court in

*Hudson.* The standing requirement was created to ensure that plaintiffs advance actual, not theoretical, constitutional harms.[2] *Hays,* 515 U.S. at ——, 115 S.Ct. at 2435, 132 L.Ed.2d at 642 (injury must be "(a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical"). The Supreme Court has expressly held that "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan,* 504 U.S. at 563, 112 S.Ct. at 2137, 119 L.Ed.2d at 365–66 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636, 643 (1972)). Plaintiffs' interpretation of *Hudson* would undue this rule. Whether or not Defendants' arbitration process meets the requirements set forth in *Hudson,* Plaintiffs lack standing to challenge it here.

## B. Standing to Challenge the Calculation of the Fee

■ Plaintiffs assert that the calculation of the fair share fee was incorrect, and that their fair share fees were used, in part, for political activities not directly related to union's role as exclusive bargaining representative. Defendants respond that Plaintiffs' failure to challenge the fees at the time they were assessed results in an absence of standing to challenge the calculation.

In support of their argument, Defendants point to language in the Supreme Court's cases placing the burden of objecting to fair share fees on nonmembers. *See, e.g., Hudson,* 475 U.S. at 306, 106 S.Ct. at 1075, 89 L.Ed.2d at 246; *International Ass'n of Ma-*

*chinists v. Street,* 367 U.S. 740, 774, 81 S.Ct. 1784, 1802–03, 6 L.Ed.2d 1141, 1164 (1961). This burden, however, does not create a requirement that the objecting nonmember make use of the union's established procedure to make his or her objections known. While "dissent is not to be presumed," *id.,* this merely establishes the union's right to make use of fair share fees on the assumption that the paying nonmembers have no objections. For example, the union will have no obligation to escrow fair share fees absent an affirmative expression of objection by the nonmember. *Hohe v. Casey,* 695 F.Supp. 814, 817 (M.D.Pa.1988), *aff'd,* 868 F.2d 69, *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). This obligation to affirmatively object also means that a nonmember who does not challenge the fair share fee may not claim the benefit of any decision favorable to those nonmembers who do object. *Street,* 367 U.S. at 774, 81 S.Ct. at 1803, 6 L.Ed.2d at 1164. It does not make objection at the time the fees are collected a prerequisite to judicial relief.

*Hudson's* requirement that the union provide an opportunity for non-judicial resolution of objections to the fee creates two alternative avenues for a dissatisfied nonmember: participation in the union's challenge procedure, or resort to the federal courts. *Hohe,* 956 F.2d at 409 ("As we read *Hudson,* it concluded only that unions must provide nonmembers with an alternative to litigation."). The challenge procedure does not create a requirement that nonmembers exhaust its remedies before bringing suit. *Id.; Hohe,* 803 F.Supp. at 1013–14.

2. Plaintiffs argue that if the arbitration procedure does not meet the *Hudson* requirements, then they did suffer actual injury, as Defendants would not have been entitled to withhold fair share fees from *any* nonmembers. In support of this argument, Plaintiffs cite the following dicta from our memorandum in *Hohe v. Casey:* "[I]f we must ultimately decide that the Union has not provided a constitutional procedure for testing the propriety of the fair share fee, we would have to issue injunctive relief against collection of the fee...." 803 F.Supp. 1012, 1017 (M.D.Pa. 1992).

This reading of our *Hohe* decision is inconsistent with the Third Circuit's ruling in *Hohe v. Casey,* 956 F.2d 399 (3d Cir.1992), finding that nonmembers were entitled only to nominal dam-

ages of one dollar, and not to actual damages, where the union's fair share fee provisions suffered from procedural defects. *Id.* at 416. The Circuit held that actual damages are available only where the accuracy of the fee calculation itself was in error. *Id.* The only injunctive relief available to Plaintiffs on their challenge to the timing of the arbitration procedure, therefore, would be a prospective injunction preventing Defendants from collecting fair share fees in the future unless they remedied any defects. *See also International Ass'n of Machinists v. Street,* 367 U.S. 740, 772–74, 81 S.Ct. 1784, 1801–03, 6 L.Ed.2d 1141, 1163–64 (1961) (remedy available only to nonmembers who have made their objections known).

Plaintiffs' failure to invoke the challenge procedure therefore does not leave them without standing to question the allocation of fair share fees. Unlike the claim based on the timeliness of the arbitration process, Plaintiffs' claim challenging the allocation of their fees does allege "injury in fact," even though they did not present a challenge at the time the fees were assessed. An improper calculation, resulting in an excessive fair share fee, necessarily causes injury to all nonmembers who pay it. The other requirements for standing are all present as well, so Defendants' motion to dismiss must fail on this point.