Marsha OTTO, et al., Plaintiffs,

v.

PENNSYLVANIA STATE EDUCATION ASSOCIATION—
NEA, et. al, Defendants.

No. 1:CV–96–1233.

United States District Court,
M.D. Pennsylvania.

July 3, 2000.

Milton L. Chappell, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, W. James Young, Sunbury, PA, for plaintiffs.

Milton L. Chappell, National Right to Work Legal Defense Foundation, Inc., Springfield, VA, W. James Young, Sun-

bury, PA, for Jane Campbell, Barbara Leiby.

Mark P. Widoff, Pennsylvania State Education Association, Harrisburg, PA, Robert H. Chanin, John M. West, Bredhoff & Kaiser, PLLC, Washington, DC, for Pennsylvania State Educ. Ass'n, National Educ. Ass'n, Grove City Area Educ., Shaler Area Educ. Ass'n, defendants.

## ORDER

MUIR, District Judge.

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

On July 2, 1996, Marsha Otto, F. Naylor Emory, Dennis A. Erb, Robert K. Gilbert, James W. Lossel, Barbara J. McCalley, and Wesley S. Semple (collectively referred to hereinafter as "Plaintiffs") filed a civil rights complaint pursuant to 42 U.S.C. § 1983 [1] and they filed an amended complaint on August 30, 1996. Named as Defendants in the amended complaint are the Pennsylvania State Education Association—NEA, National Education Association, and Shaler Area Education Association (collectively referred to hereinafter as "Defendants"). The Shaler Area Education Association is the local exclusive collective bargaining representative of the Plaintiffs. The remaining two Defendants are that local union's state and national affiliates. Notwithstanding that representation the Plaintiffs are not members of any of the Defendant unions. The Plaintiffs' claims in this action stem from constitutional challenges to the Defendants' collection of certain fees and the procedures by which those fees have been collected pursuant to The Pennsylvania Fair Share Act, 71 Pa. Stat. § 575 (1990).

**1.** Section 1983 reads, in relevant part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

The Clerk of Court originally assigned this case to Judge Caldwell and referred it to Magistrate Judge Smyser for preliminary consideration. On December 16, 1997, the case was reassigned to Judge Caputo. On November 30, 1998, the case was reassigned to Judge Kane.[2] On January 13, 1997, Judge Caldwell issued an order in which he succinctly summarized the legal and factual framework of this case as follows

The Pennsylvania Fair Share Act, 71 Pa. Stat. § 575 (1990), authorizes public employees' unions to collect fair share fees from nonmembers to help defray the cost of the union's exclusive bargaining representation of all employees. *Id.* § 575(b). Fair share fees are calculated as the dues paid by union members, less the amounts not employed by the union in its role as exclusive representative. *Id.* § 575(a). The fair share fee is thus a percentage of the full fee paid by the union members.

Because the mandatory collection of fair share fees from nonmembers represents some degree of impairment of the nonmembers['] First Amendment rights, the union must provide nonmembers with certain procedural safeguards. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 301–03, 106 S.Ct. 1066, 1073–74, 89 L.Ed.2d 232, 243–45 (1986). The nonmember has a right to object to any portion of his or her fees being spent on political activities unrelated to the union's duties as exclusive bargaining representative. *Id.* at 301–02, 106 S.Ct. at 1073, 89 L.Ed.2d at 244....

Each year, Defendants each make a separate calculation of the percentage of

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**2.** On or about June 14, 2000, we agreed to handle the outstanding pretrial motions in this case and the motions were reassigned to us for that purpose.

their expenses which will be applied to collective bargaining representation. This percentage is then used to determine the fair share fee to be paid by nonmembers. [The Pennsylvania State Education Association—NEA's and the National Education Association's] calculations are verified by independent audit, but Shaler Area Education Association's are not.

(Document 120, pgs. 2–3).[3]

On October 24, 1997, the parties filed a proposed stipulation providing that Plaintiffs would limit the relief sought to declaratory and injunctive relief on the following three claims: 1) Defendant Shaler Area Education Association's calculation of its fair share fee be verified by an independent auditor; 2) Plaintiffs may not be charged for Defendants Pennsylvania State Education Association's and National Education Association's expenditures for litigation which does not involve Plaintiffs' bargaining unit; and 3) Plaintiffs may not be charged for Defendant Pennsylvania State Education Association's otherwise chargeable expenditures which involve health care professionals who are also represented by the Defendant Pennsylvania State Education Association. The stipulation further restricted the scope of those claims strictly to the 1994–95 school year. By order dated October 27, 1997, Judge Caldwell approved that stipulation. That order also provides that the parties' requests for attorneys' fees remain before the court for resolution.

On November 6, 1997, the parties filed a joint motion to resolve the case on cross-motions for summary judgment based on a stipulated set of facts filed with the court. Judge Caldwell granted that motion in an order dated November 12, 1997. The cross-motions for summary judgment were referred to Magistrate Judge Smyser.

After the cross-motions for summary judgment were fully briefed, on January 28, 1999, Magistrate Judge Smyser filed a report recommending that each motion for summary judgment be granted in part and denied in part. The Magistrate Judge specifically recommended that judgment be entered in favor of the Plaintiffs on their first and second claims and that judgment be entered in favor of the Defendants on the third claim. All of the parties filed objections to that report and recommendation on February 16, 1999. Although the Defendants requested oral argument on their objections, we are of the view that such argument is neither necessary nor advisable. Those objections have been fully briefed and are ripe for disposition. This order addresses the Magistrate Judge's report and recommendations regarding the parties' cross-motions for summary judgment, to which each there are objections.[4]

■ When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections. United States vs. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1); M.D. Pa. Local Rule 72.31.

Summary judgment is appropriate only when there is no genuine issue of material fact which is unresolved and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This may be met by

---

**3.** Because that summary was incorporated into the Report and Recommendation of Magistrate Judge Smyser which is currently before us, and no party has objected to it, we will adopt it and rely upon it in the disposition of this case.

**4.** The only other pending motion is one to intervene which has been filed by Jane Campbell and Barbara Leiby. In a separate order we will rule on that motion.

the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325, 106 S.Ct. 2548. We also note that Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 323, 106 S.Ct. 2548. Those same standards govern cross-motions for summary judgment. *Continental Ins. Co. v. Kubek*, 86 F.Supp.2d 503, 505 n. 2 (E.D.Pa.2000) (Katz, J.) (citing *Appelmans v. Philadelphia*, 826 F.2d 214, 216 (3d Cir.1987)). When considering such cross-motions "each motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Nolen v. Paul Revere Life Ins. Co.*, 32 F.Supp.2d 211, 213 (E.D.Pa.1998) (Robreno, J.).

When addressing a motion for such a judgment, our inquiry focuses on "whether *the evidence* presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). As summarized by the Advisory Committee On Civil Rules, "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note to 1963 Amendment.

In this case the proof we are examining is strictly limited to the set of stipulated facts submitted by the parties. In such a case, where we are required to "draw inferences from the stipulated facts, we must still resolve them against the moving party and in favor of the nonmoving party." *Luden's, Inc. v. Local Union No. 6*, 28 F.3d 347, 353 (3d Cir.1994) (citing cases).

The essential elements of a claim brought pursuant to 42 U.S.C. § 1983 require that the conduct complained of 1) be committed by a person acting under color of state law and 2) the conduct has deprived the plaintiffs of one of their rights, privileges, or immunities secured by the constitution or federal law. *Parrat v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The rights at issue in this case are those grounded in the First and Fourteenth Amendments guaranteeing "the freedom of an individual to associate for the purpose of advancing beliefs and ideas." *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 233, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). That freedom encompasses the right to refuse to associate. *Id.*

In *Abood* the United States Supreme Court addressed constitutional claims brought by non-union member employees challenging a Michigan statute

> authorizing a system for union representation of local governmental employees. A union and a local government employer are specifically permitted to agree to an "agency shop" arrangement, whereby every employee represented by a union—even though not a union member—must pay to the union, as a condition of employment, a service fee….

*Id.* at 211, 97 S.Ct. 1782. A number of the plaintiffs in *Abood* were teachers at a public school. They challenged the constitutionality of both the public-sector union and the use of their service fees for various union activities. *Id.* at 211–14, 97 S.Ct. 1782.

In the course of upholding the constitutionality of an agency shop arrangement in the public sector, the Supreme Court in *Abood* reiterated its prior observations that

> [t]o compel employees financially to support their collective bargaining representative has an impact upon their First

Amendment interests. An employee may very well have ideological objections to a wide variety of activities undertaken by the union in its role as exclusive representative. His moral or religious views about the desirability of abortion may not square with the union's policy in negotiating a medical benefits plan.... The examples could be multiplied. To be required to help finance the union as a collective-bargaining agent might well be thought, therefore, to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in *Hanson* and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress. 'The furtherance of the common cause leaves some leeway for the leadership of the group. As long as they act to promote the cause which justified bringing the group together, the individual cannot withdraw his financial support merely because he disagree's with the group's strategy....'

*Id.* at 222, 97 S.Ct. 1782 (quoting *International Ass'n of Machinists v. Street,* 367 U.S. 740, 778, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961)). Thus, the degree of infringement upon such employees' First Amendment rights which is inherent in a union-shop arrangement has been justified because of the governmental interest in industrial peace. *Ellis v. Broth. of Ry., Airline and S.S. Clerks,* 466 U.S. 435, 455–56, 104 S.Ct. 1883, 1896, 80 L.Ed.2d 428 (1984) (citations omitted).

In *Ellis* the plaintiffs challenged the legality of collecting fees pursuant to a union-shop arrangement which were used to fund six specific activities. The Supreme Court was required to decide whether nonunion member funds could constitutionally fund three of those activities. The Court reasoned that

[a]t a minimum, the union may constitutionally 'expend uniform exactions under the union-shop agreement in support of activities germane to collective bargaining.' ... The issue is whether these [three challenged] expenses involve additional interference with First Amendment interests of objecting employees, and, if so, whether they are nonetheless adequately supported by a governmental interest.

*Id.,* 466 U.S. at 456, 104 S.Ct. at 1896.

The United States Supreme Court's most recent relevant decision crystalized the governing standard as follows:

[t]hus, although the Court's decisions in this area prescribe a case-by-case analysis in determining which activities a union constitutionally may charge to dissenting employees, they also set forth several guidelines to be followed in making such determinations. *Hanson* and *Street* and their progeny teach that chargeable activities must (1) be "germane" to collective bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding "free riders"; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop.

*Lehnert, et al. v. Ferris Faculty Ass'n, et al.,* 500 U.S. 507, 520, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572 (1991). We will apply the above-referenced precedent in reviewing the three claims presented in Magistrate Judge Smyser's Report and Recommendation.

The first issue addressed by the Magistrate Judge is whether "Defendant Shaler Area Education Association is required to have its financial disclosure to nonmember 'fair share' feepayers verified by an independent auditor." (Document 120, pg. 10) No party objects to the manner in which Magistrate Judge Smyser framed that issue.

The parties have stipulated to the following two facts: 1) "[Shaler Area Edu-

cation Association's] membership dues for the 1994–95 school year were $50.00. Its fair-share fee for that year was $45.00," and 2) "[Shaler Area Education Association's] financial statements and its calculations described in paragraph 6 [of the stipulation] were not verified by an independent auditor." (Document 120, pg. 7) No other fact in the stipulation is relevant to this issue.

Based on those facts Magistrate Judge Smyser concluded that a case decided by the United States Supreme Court and a case decided by the Court of Appeals for the Third Circuit have resolved this issue and they dictate that we grant the Plaintiffs' motion for summary judgment on this claim. *See Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *Hohe, et al. v. Casey, et al.*, 956 F.2d 399 (3d Cir.1992). The latter decision was an appeal from a decision rendered by Judge Caldwell in this court.

The Defendants object to that conclusion, contending that the Magistrate Judge has misread and misapplied those cases to the stipulated facts. The foundation underlying that contention is the supposition that the verification-by-audit requirement discussed in *Hudson* and *Hohe* does not apply to "relatively small local unions." (Document 126, pgs. 17–18)

We are of the view that the courts' decisions *Hudson* and *Hohe*, including Judge Caldwell's Memoranda in *Hohe* reported at 695 F.Supp. 814 and 727 F.Supp. 163, refute the Defendants' contentions. In his report and recommendations Magistrate Judge Smyser properly applies *Hudson* and *Hohe*. We elaborate on his treatment of the issue simply to address the Defendants' specific objections.

In *Hudson* the United States Supreme Court stated

[t]he Union need not provide nonmembers with an exhaustive and detailed list of all its expenditures, but adequate disclosure surely would include the major categories of expenses, as well as verification by an independent auditor. With respect to an item such as the Union's payment of $2,167,000 to its affiliated state and national labor organizations, ..., for instance, either a showing that none of it was used to subsidize activities for which nonmembers may not be charged, or an explanation of the share that was so used was surely required.

*Hudson*, 475 U.S. at 307 n. 18, 106 S.Ct. at 1076 n. 18. In that case the "union" was the local exclusive collective bargaining representative of the plaintiffs. That union directly incurred expenses on behalf of the fair share feepayers and it directly collected those fees from them. In the quoted footnote the Court required that such expenses by the local union be verified by an audit. However, in that same footnote, the court did not extend the audit requirement to amounts collected by the local union for the expenses of its state and national affiliates. The expenses at the state and national levels should be audited at those levels. The distinction between the expenses incurred by the exclusive collective bargaining representative and those incurred by its state and national affiliates is significant.

In *Hohe* this court, per the Honorable William W. Caldwell, applied the rulings in *Hudson* to a case in which both types of expenses discussed in footnote 18 of *Hudson* were considered (i.e., those incurred directly by the local exclusive collective bargaining representative of the plaintiffs, and those which were actually incurred by its non-local affiliate unions). In separate memoranda decisions, Judge Caldwell concluded that the former expenses are subject to the verification-by-audit requirement and the latter expenses, which he described as "financial information for affiliate unions" is not subject to that requirement. *Hohe v. Casey*, 695 F.Supp. 814, 818–819 (M.D.Pa.1988) (Caldwell, J.) ("*Hudson* does not require that each local expenditure be audited."), *aff'd*, 868 F.2d 69 (3d Cir.1989); *Hohe v. Casey*, 727

F.Supp. 163 (M.D.Pa.1989), 956 F.2d 399 (3d Cir.1992).

The Court of Appeals for the Third Circuit affirmed those conclusions in two separate reported decisions. *Id.* In its latter decision, the Court of Appeals stated

[u]nder *Hudson,* Council 13 was required to send nonmembers notice that included "the major categories of expenses, as well as verification by an independent auditor." ... On December 11, 1989, the district court determined that "the breakdown of chargeable and non-chargeable expenses ... were not subjected to verification by an independent auditor as required by *Hudson.*" ... It went on to state that "[h]aving found a violation of plaintiff's first amendment rights in the unions' *Hudson* procedure, we must determine *an appropriate remedy.*"

*Hohe,* 956 F.2d at 415 (emphasis in original). Judge Caldwell concluded the appropriate remedy for failing to verify the expenses by an independent auditor was nominal damages of $1.00 to each plaintiff. The Court of Appeals affirmed that conclusion. *Id.*

None of those reported decisions draws a distinction based on the size of the union. It appears to us that all of the authority cited by Defendants relates to "financial information for affiliate unions." The relevant distinction is whether the fees at issue are used by the direct exclusive collective bargaining representative or simply an affiliate thereof. We are of the view that "financial information for affiliate unions", which need not be verified by an audit, is not at issue in this case.

For those reasons, we agree with the Magistrate Judge that the portion of the fee charged to Plaintiffs for expenses incurred directly by their local exclusive collective bargaining representative is required to be verified by an audit. The Plaintiffs are entitled to a declaratory judgment that the constitution requires Shaler Area Education Association to pro-

vide nonmembers a financial statement of its expenses that has been audited.

■ The fundamental issue underlying the second claim is whether the Plaintiffs "may not be charged, as plaintiffs allegedly have been charged by defendants [Pennsylvania State Education Association–NEA and National Education Association], for litigation expenditures incurred in litigation not relating specifically to the plaintiffs' own collective bargaining unit." (Document 120, pg. 13) The Magistrate Judge recommends we declare that Defendants Pennsylvania State Education Association and National Education Association are precluded from collecting those expenses from objecting feepayers and enjoin the collection of those costs from the Plaintiffs. This recommendation is based on his reading of the Supreme Court Justices' four separate opinions in *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), and that court's earlier decision in *Ellis v. Broth. of Ry., Airline and S.S. Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

Justice Blackmun wrote the opinion of the court in *Lehnert.* In one portion of his opinion he stated that

[w]hen unrelated to an objecting employee's unit, such activities are not germane to the union's duties as exclusive bargaining representative. Just as the Court in *Ellis* determined that the RLA, as informed by the First Amendment, prohibits the use of dissenters' fees for extraunit litigation, ..., we hold that the Amendment

proscribes such assessments in the public sector. *Lehnert,* 500 U.S. at 528, 111 S.Ct. at 1964 (1991). A total of four Justices joined in that portion of Justice Blackmun's opinion.

The Defendants object to the recommendation on the grounds that the Magistrate Judge has again misread those cases. They specifically argue that 1) the discussion of extra-unit litigation costs in *Leh-*

*nert* is *dicta* and therefore irrelevant; 2) no position of any Justice in *Lehnert* on the issue commanded a majority of Justices; and 3) the *Ellis* case is inapplicable.

Although we agree that the Justices' comments on extra-unit litigation costs in *Lehnert* are *dicta*, the Court of Appeals for the Third Circuit has stated that

> we should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket.

*McDonald v. Master Financial, Inc., et al,* 205 F.3d 606 (3d Cir.2000) (noting that appellate courts which ignore dicta "frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there"). We will pay heed to Justice Blackmun's opinion on the question of extra-unit litigation fees, as did Magistrate Judge Smyser.

The relevant paragraph of Justice Blackmun's opinion, which we have quoted above, garnered the concurrence of a total of four Justices. Magistrate Judge Smyser reads Justice Scalia's concurring opinion, in which Justices O'Connor, Souter, and Kennedy joined, as the votes tipping the scales in Plaintiffs favor on this issue. In order to weigh the significance of Justice Scalia's concurrence, it is necessary to review the United States Supreme Court's prior holding in *Ellis v. Broth. of Ry., Airline and S.S. Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

In *Ellis* the Court held that it was unlawful for objecting employees to be charged for the expenses of litigation which did not concern bargaining unit employees and was not normally conducted by the exclusive bargaining representative. *Ellis,* 466 U.S. at 453, 104 S.Ct. at 1895. The Court's analysis in *Ellis* was admittedly based on the statutory interpretation of the Railway Labor Act. However, in his concurring opinion in *Lehnert,* Justice Scalia construed *Ellis* "as merely reflecting

the constitutional rule." As noted above, Justices O'Connor, Souter, and Kennedy joined in that portion of Justice Scalia's opinion. We are of the view that Magistrate Judge Smyser has correctly interpreted and applied those cases.

That view is further supported by a decision of the United States Court of Appeals for the First Circuit. In *Romero v. Colegio De Abogados De Puerto Rico, et al.,* 204 F.3d 291 (1st Cir.2000), a panel of judges of that court considered an issue similar to the one currently before us and stated

> [a]lthough the decision [in *Ellis* ] turned on a statutory interpretation of the Railway Labor Act, ... the Court was clear that its interpretation was required to avoid constitutional difficulty, .... Later cases have interpreted Ellis as setting forth constitutional rules, see *Glickman v. Wileman Bros. & Elliott, Inc.,* 521 U.S. 457, 472, 117 S.Ct. 2130, 138 L.Ed.2d 585 (1997); *Lehnert v. Ferris Faculty Ass'n,* 500 U.S. 507, 516, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991), ....

*Romero,* 204 F.3d at 298.

Based on the authority noted above, we adopt Magistrate Judge Smyser's second recommendation and will 1) declare that the Defendants can not constitutionally charge Plaintiffs for the extra-unit litigation expenses at issue in this case and 2) enjoin the Defendants from collecting fees based on those expenses.

The Magistrate Judge's third and final recommendation is that summary judgment be entered in favor of the Defendants because the Plaintiffs have not discharged their burden to show that they are entitled to relief on their third claim. The Plaintiffs object to that recommendation on the ground that 1) the Magistrate Judge erroneously shifted the burden of proof onto them in spite of Supreme Court case law placing the burden on the Defendants; and 2) the stipulated facts are suffi-

cient to establish the constitutional violation asserted in the third claim.[5]

■ As noted above, a plaintiff in a § 1983 action has the burden of showing that the defendant's conduct has deprived the plaintiff of one of his or her rights, privileges, or immunities secured by the constitution or federal law. *Parrat v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Although Magistrate Judge Smyser did not explicitly cite *Parratt, supra.*, as the authority supporting his conclusion as to the burden of proof, that case most definitely applies. The cases cited by the Plaintiffs regarding allocation of the burden of proof address the issue in subsequent stages of the case. We agree with Magistrate Judge Smyser's recommendation that the Plaintiffs have the prima facie burden of establishing the elements of a § 1983 claim.

Based on the principles set forth in *Hanson, Street, Abood, Ellis,* and *Lehnert,* the Plaintiffs here can meet that burden only by showing that the activities for which they have been charged (1) are not "germane" to collective bargaining activity; (2) are not justified by the government's vital policy interest in labor peace and avoiding "free riders"; *or* (3) significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. *Lehnert, et al. v. Ferris Faculty Ass'n, et al.,* 500 U.S. 507, 520, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572 (1991).

The only three relevant stipulated facts are that

15. PSEA's affiliated local associations represent the following types of employees: (a) teachers and other education professionals (103, 712 employees in 608 bargaining units during the 1994–95 school year); (b) education support personnel (21, 391 employees in 371 bargaining units during 1994–95); and © health-care professionals, in both the public and private sectors (approximately 1, 548 employees in 6 bargaining units during 1994–95).

16. PSEA provides generally the same kinds of services to all of its affiliated local associations, and to the members of their bargaining units, regardless of which type of employee the local association represents.

17. In calculating its dues percentage that is chargeable to fair-share fee-payers, PSEA considers all of its expenditures together, calculating the ratio of all of its chargeable expenditures to all of its expenditures-rather than treating separately, and calculating separate chargeable percentages for, its expenditures attributable to services provided to educational professionals, educational support personnel, and health-care professionals.

(Document 102, paras. 15–17) The stipulated evidentiary record submitted by the parties does not provide sufficient facts for us to determine whether the activities funded by the fees relating to the Plaintiffs' third claim either (1) are not "germane" to collective bargaining activity, (2) are not justified by the government's vital policy interest in labor peace and avoiding "free riders", *or* (3) significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop. Consequently, those facts do not support the conclusion that the Plaintiffs'

---

**5.** The Defendants filed a brief in opposition to the Plaintiffs' objections in which they state "[w]hile defendants agree with the result [as to the third claim] we do not embrace all of the reasoning by which the Report arrives at that conclusion." The majority of their brief is, in essence, a document containing additional objections to the Magistrate Judge's report and recommendations. Because that document was not filed within the time allowed for such objections, we will not consider the objections contained therein. *See* M.D. Local Rule 72.3.

constitutional rights relating to that claim have been violated.

With respect to their summary judgment motion, the Plaintiffs have failed to discharge their initial burden of demonstrating, with any information of record, the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c), (e); M.D. Pa. Local Rules 5.4, 7.3, 56.1. The Plaintiffs are not entitled to summary judgment on that claim.

We next consider how the absence of critical facts in the record affects the Defendants' motion for summary judgment. We are of the view that the Magistrate Judge correctly notes that there is an absence of evidence to support essential elements of the Plaintiffs' third claim on which the Plaintiffs bear the burden of proof. The absence of those facts weighs in Defendants' favor because Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We will grant the Defendants' motion for summary judgment on the third claim.

In closing, we note the potential significance of Federal Rule of Civil Procedure 39, entitled "Trial by Jury or by the Court." Subsection (a) of that rule, entitled "By Jury," provides in part that "[t]he trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court ... consent to trial by the court sitting without a jury." Fed.R.Civ.P. 39(a).

On October 24, 1997, the parties jointly filed a stipulation and settlement agreement which provided in relevant part that the parties had reached an agreement "[i]n order to resolve without further litigation certain issues involved in this lawsuit, and to provide for the simplified and expeditious judicial resolution of those issues that remain unresolved." (Document 101, pg. 1) In the third paragraph of that document, the parties stipulate that the three remaining claims in this case "shall remain for judicial resolution." (Document 101, pg. 2, para. 3) In the fifth paragraph of that document "[t]he parties agree that no further discovery will be necessary for litigation of the remaining issues in this case." (Document 101, pg. 3, para. 5)

In their joint motion to establish the procedures for their cross-motions for summary judgment, which was filed on November 6, 1997, the parties described their October 24, 1997, documents as "reserv[ing] three questions of law for adjudication by this Court pursuant to the stipulated facts." (Document 104) On November 12, 1997, the Honorable William W. Caldwell granted that motion, which allowed the parties to deviate from the standard local rules relating to motions for summary judgment. (Document 105)

Although Rule 39(a) is not referenced in any of the documents filed by the parties, we will construe their stipulation, settlement agreement, and motion for summary judgment collectively as a Rule 39(a) stipulation that we may resolve the three remaining claims based solely on the stipulated facts. Our view is based primarily on the language employed in their filings seeking "expeditious judicial resolution" of those claims. We also note that no party has objected to the Magistrate Judge's report on the basis that additional facts should be supplied to the court, or that the case should be listed for trial on the third claim.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The report and recommendation of Magistrate Judge Smyser is adopted.

2. Plaintiffs' objections to that report and recommendation are overruled.

3. Defendants' objections to that report and recommendation are overruled.

4. Plaintiffs' motion for summary judgment (Doc. 106) is granted in part and denied in part as set forth in ¶¶ 5, 6, and 7 hereafter.

5. Plaintiffs' motion for summary judgment (Doc. 106) on the claim that Defendant Shaler Area Education Association's calculation of its fair share fee is required to be verified by an independent auditor is granted.

6. Plaintiffs' motion for summary judgment (Doc. 106) on the claim that Plaintiffs may not be charged for Defendants Pennsylvania State Education Association's and National Education Association's expenditures for litigation which does not involve Plaintiffs' bargaining unit is granted.

7. Plaintiffs' motion for summary judgment (Doc. 106) on the claim that Plaintiffs may not be charged for Defendants' otherwise chargeable expenditures which involve health care professionals who are also represented by the Defendant Pennsylvania State Education Association is denied.

8. A declaratory judgment shall be entered providing that the Defendants can not constitutionally charge Plaintiffs for the extra-unit litigation expenses at issue this case.

9. The Defendants are enjoined from collecting fees based on the extra-unit litigation expenses at issue in this case.

10. Defendants' motion for summary judgment (Doc. 110) is granted in part and denied in part as set forth in ¶¶ 11, 12, and 13 hereafter.

11. Defendants' motion for summary judgment (Doc. 110) on the claim that Defendant Shaler Area Education Association's calculation of its fair share fee is required to be verified by an independent auditor is denied.

12. Defendants' motion for summary judgment (Doc. 110) on the claim that Plaintiffs may not be charged for Defendants Pennsylvania State Education Association's and National Education Association's expenditures for litigation which does not involve Plaintiffs' bargaining unit is denied.

13. The Defendants' motion for summary judgment (Doc. 110) on the claim that Plaintiffs may not be charged for Defendants' otherwise chargeable expenditures which involve health care professionals who are also represented by the Defendant Pennsylvania State Education Association is granted.

14. The Clerk of Court shall send a copy of this order to the Hon. Yvette Kane and the Hon. Andrew J. Smyser.

### ORDER

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

The majority of the relevant background of this order is set forth in Order #1 issued in this case on this date. We supplement the background here only to the extent necessary for ruling on a motion for leave to intervene in this action as Plaintiffs filed on April 22, 1999, by Jane Campbell and Barbara Leiby. A brief supporting that motion and a "Complaint in Intervention" were filed on the same date. The Defendants filed their brief in opposition on May 10, 1999. The Plaintiffs filed their brief in reply on May 20, 1999, thereby ripening the motion for disposition.

 Campbell and Leiby seek to intervene in this action pursuant to either subsection (a)(2) or (b)(2) of Rule 24 of the Federal Rules of Civil Procedure. Subsec-

tion (a) of that rule, entitled "Intervention of Right," provides in relevant part that

> [u]pon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The Court of Appeals for the Third Circuit has stated that intervention pursuant to Rule 24(a)(2)

> require[s] proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler, et al. v. U.S. Forest Service, et al.*, 157 F.3d 964, 969 (3d Cir.1998). That court described the standard as "nebulous," and cautioned "that Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Id.*, at 969, 972. The potential intervenors' motion to intervene has been timely filed based upon the United States Supreme Court's holding in *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977).

Because all of the other elements which must be fulfilled to intervene relate to the potential intervenors' interests, we turn to the specific "property or transaction which is the subject of the action." Fed.R.Civ.P. 24(a)(2). The "interest" to be considered has been described as "a cognizable legal interest, and not simply an interest 'of a general and indefinite character.'" *Brody By And Through Sugzdinis v. Spang*, 957 F.2d 1108, 1116 (3d Cir.1992) (citations omitted).

In essence, this case concerns seven plaintiffs challenging certain fees that they paid during the 1994–95 school year. The parties' stipulation filed on October 24, 1997, significantly narrowed the scope of this case. Based on that stipulation the only transactions at issue in this action are: 1) Defendant Shaler Area Education Association's calculation of its fair share fee to the Plaintiffs for whom it was the exclusive collective bargaining representative; 2) Defendants Pennsylvania State Education Association's and National Education Association's charges to Plaintiffs for litigation which does not involve Plaintiffs' bargaining unit; and 3) Defendant Pennsylvania State Education Association's charges to Plaintiffs for expenditures which involve health care professionals who are also represented by the Defendants Pennsylvania State Education Association. The stipulation further restricted the transactions at issue strictly to the charges assessed during 1994–95 school year. In addition, the stipulation limited the relief obtainable to declaratory and injunctive relief.

Neither of the potential intervenors claims to have paid any fair share fees during the 1994–95 school year. The complaint in intervention alleges that they have been fair share feepayers only since the 1996–97 school year. Neither of them was a member during the 1994–95 school year of the Shaler Area Education Association, which is the bargaining unit representative of the current Plaintiffs. Campbell is a member of a bargaining unit which is represented by an entity which had been a Defendant but was dismissed as party in this action. Leiby is a member of a bargaining unit that is represented by a local union which is not a party in this action. None of the stipulated facts concerns any fee charged to either of the potential intervenors.

We are of the view that Campbell and Leiby do not have a sufficient legally cog-

nizable interest in this litigation which justifies granting their motion to intervene as of right. In their brief Campbell and Leiby acknowledge that a sufficient interest in the litigation is a necessary prerequisite (Document 137, pg.) for such intervention. However, nowhere in their 4-page argument addressing intervention as of right do they identify or describe in any detail such an interest. The potential intervenors have not shown that they are entitled to intervene as a matter of right.

Campbell and Leiby have also moved for permission to intervene pursuant to Rule 24(b)(2). Although our denial of their motion to intervene as a matter of right does not dictate the denial of their motion for permission to intervene, the factors which we have noted above weigh heavily against granting the permissive component of the potential intervenors' motion. The intervenors have no significant legally cognizable interest in this case.

In considering a motion filed pursuant to Rule 24(b)(2) we are also required to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R.Civ.P. 24(b)(2). The complaint in intervention would initiate a class action of "more than 200" (Complaint attached to Document 136, pg. 8, para. 17) individuals seeking to assert challenges to many procedures and fee charges which are well beyond the scope of this action. We are of the view that such intervention would unduly delay the adjudication of the rights of the original plaintiffs.

In our Order # 1 of this date we disposed of the only other pending motion in this case. Because there are additional matters in this case which will probably be addressed by Judge Kane (i.e., the entry of judgment pursuant to our Order # 1 and the resolution of the parties' claims for attorneys' fees), we will order the Clerk of Court to return the file in this case to Judge Kane and adjust the assignment of the case accordingly.

NOW, THEREFORE, IT IS ORDERED THAT:

1. Campbell's and Leiby's motion to intervene (Document 136) is denied.

2. The Clerk of Court shall return this file to the Honorable Yvette Kane and adjust the assignment of the case accordingly.