Leroy ROBINSON and Jay
Dino, Plaintiffs

v.

PENNSYLVANIA STATE CORREC-
TIONS OFFICERS ASSOCIA-
TION, et al., Defendants.

Civil Action No. 1:02–CV–1124.

United States District Court,
M.D. Pennsylvania.

Jan. 15, 2004.

Debra K. Wallet, Frank P. Clark, Clark Law Office, Camp Hill, PA, Thomas W. Jennings, Sagot, Jennings & Sigmond, Philadelphia, PA, for Plaintiffs.

Linda S. Lloyd, Office of Attorney General, Harrisburg, PA, Stephen J. Holroyd, Thomas W. Jennings, Sagot, Jennings & Sigmond, Philadelphia, PA, for Defendants.

### MEMORANDUM

CONNER, District Judge.

Presently before the court is a motion (Doc. 23) by plaintiffs, representing a class of nonunion workers employed by the Commonwealth of Pennsylvania, for partial summary judgment. Plaintiffs claim that defendant, the Pennsylvania State Corrections Officers Association ("Association"), exclusive bargaining representative for the employees, violated their First Amendment rights by collecting a "fair share fee" without prior notice justifying the fee. The Association contends that it was excused from offering such notice because, as a new organization, it lacked a history of expenditures on which to base a fair share fee calculation.

The question presented is whether a "new union" exception exists to the constitutional requirement that unions provide notice to nonunion employees explaining the basis of a fair share fee prior to collection. For the reasons that follow, the court holds that no such exception exists and will grant the motion for partial summary judgment.

### I. Statement of Facts

The Association was formed in 2001 to serve as the collective bargaining representative for employees of state correctional and forensic facilities. (Doc. 25 ¶¶ 7–8; Doc. 34, Ex. 1). During that year, the Commonwealth of Pennsylvania decertified the incumbent collective bargaining unit[1] and certified the Association as the new exclusive representative for the employees. Shortly thereafter, the Commonwealth and the Association executed a new collective bargaining agreement governing terms and conditions of employment for these individuals. (Doc. 25 ¶¶ 7–8, 12; Doc. 34, Ex. 1).

One provision of the agreement required the Commonwealth to deduct "fair share fees" from nonunion employees and to remit these fees to the Association to finance its bargaining activities. (Doc. 25 ¶¶ 13–14; Doc. 34). Officials of the Association, after reviewing the expenditures of its predecessor, determined that a fee of one percent of nonunion employees' gross pay was appropriate to meet the Association's expenses. (Doc. 25 ¶¶ 15–16; Doc. 34, Ex. 1). The Association neither notified employees that the fee would be charged nor

---

1. The reason for the decertification of the prior representative is unclear from the record.

disclosed the method used to calculate the one percent fee. (Doc. 25 ¶¶ 31–32; Doc. 34). The Commonwealth began deducting the fee from salaries of nonunion employees in December 2001, remitting these amounts to the Association. (Doc. 25 ¶ 26; Doc. 34).

In June 2002, plaintiffs filed a complaint on behalf of all nonunion employees required to pay the fair share fee,[2] claiming that collection of the fee without prior notice of the method of calculation violates the First Amendment rights of nonunion employees. (Docs. 1, 5). Defendants filed an answer admitting that the fair share fee had been deducted from nonunion employees' salaries without such notice but denying that this resulted in a constitutional violation. (Docs. 13–14).

On March 15, 2003, the Association issued to nonunion employees a notice of a change in the fair share fee. (Doc. 25 ¶ 41; Doc. 34). The notice listed the categories of expenses incurred by the Association in previous years and distinguished between expenditures related to non-ideological activities (chargeable to nonunion employees) and those related to ideological activities (not chargeable to these employees). (Doc. 25, App. D at U1793–U1804). Based on audited financial statements from previous years, the union set the new fair share fee at 1.17% of gross salary. The notice also advised individuals that they could challenge the computation of the fee before an independent arbitrator and that all deductions would be held in escrow pending resolution of the objections. (Doc. 25, App. D at U1793–U1804).

In July 2003, plaintiffs filed a motion for summary judgment on the issue of whether collection of fair share fees before March 15, 2003, violated the First Amendment rights of nonunion employees. (Doc. 23). Plaintiffs seek an order declaring a constitutional violation and directing defendants to account for and disgorge all fees collected from nonunion employees during this period. (Doc. 23).

## II. Standard of Review

Federal Rule of Civil Procedure 56 permits the entry of summary judgment against a party on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001). In resolving a motion for summary judgment, courts should not weigh conflicting evidence or make factual findings but, rather, should "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Schnall v. Amboy Nat'l Bank*, 279 F.3d 205, 209 (3d Cir.2002). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

**2.** The court subsequently certified plaintiffs to represent a class of "all persons in the Commonwealth of Pennsylvania H–1 Bargaining Unit who are nonmembers of the Pennsylvania State Correctional Officers Association ... and who at any time since December 2001 had deducted from their pay a fair share fee that was remitted to [the Association] or will have such a fair share fee deducted from their pay at any time before this litigation is resolved." (Doc. 16).

### III. *Discussion*

■ Resolving whether the Association breached its constitutional obligations by failing to provide advance notice of the fair share fee requires an examination of the Supreme Court's decisions in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), and *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). These cases upheld the validity of "agency shop" arrangements, in which all employees, regardless of union affiliation, are obligated to contribute financially to the union designated as exclusive bargaining representative by the employer. *Hudson*, 475 U.S. at 301–03, 106 S.Ct. 1066; *Abood*, 431 U.S. at 211, 231, 97 S.Ct. 1782. The Court recognized that a blanket requirement forcing nonunion employees to support union activities implicates the First Amendment rights of those employees. Nevertheless, it held that such interference was "constitutionally justified by . . . the important contribution" of such arrangements to ensure the viability of union representation and eliminate "free riders"—employees who benefit from the union's bargaining efforts but refuse to support those exertions financially. *Id.* at 222–26, 231, 234–35, 97 S.Ct. 1782; *accord Hudson*, 475 U.S. at 302–03, 106 S.Ct. 1066. Therefore, unions may impose a fair share fee on nonunion employees "to finance expenditures by the [u]nion for the purposes of collective bargaining, contract administration, and grievance adjustment." *Abood*, 431 U.S. at 225–26, 231, 97 S.Ct. 1782.

■ However, the Court refused to allow unions to use fair share fees for "ideological" and "political" activities. *Hudson*, 475 U.S. at 305, 106 S.Ct. 1066; *see Abood*, 431 U.S. at 234–35, 97 S.Ct. 1782. Whatever the benefits of union representation, they cannot outweigh the First Amendment rights of nonunion employees to support only that political speech with which they agree. *Hudson*, 475 U.S. at 305–06, 106 S.Ct. 1066; *see also Abood*, 431 U.S. at 234, 97 S.Ct. 1782 ("The fact that the appellants are compelled to make, rather than prohibited from making, contributions for political purposes works no less an infringement of their constitutional rights."). Unions may not use funds obtained through a fair share fee to advance "political views, . . . political candidates, or . . . other ideological causes not germane to [their] duties as . . . collective-bargaining representative." *Id.* at 235, 97 S.Ct. 1782. Any appropriation of a nonunion employee's earnings for an impermissible use, even if the funds are later returned, constitutes a violation of the employee's First Amendment rights. *Hudson*, 475 U.S. at 305–06, 106 S.Ct. 1066 ("A forced exaction followed by a rebate equal to the amount improperly expended is . . . not a permissible response to the nonunion employees' objections.").

To "avoid the risk that dissenters' funds may be used [even] temporarily for an improper purpose," the Court in *Hudson* instituted several "procedural safeguard[s]" that unions must follow "to minimize the risk that nonunion employees' contributions might be used for impermissible purposes." *Id.* at 305–06, 309, 106 S.Ct. 1066. Perhaps the most important of these is advance notice to nonunion employees explaining the method by which the fee was calculated.[3] *See id.* at 305–06, 309–10, 106 S.Ct. 1066.

---

**3.** In addition to advance notice, unions must provide nonunion employees with "a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker[ ] and an escrow for the amounts reasonably in dispute while such challenges are pending." *Hudson,* 475 U.S. at 310, 106 S.Ct. 1066.

Basic considerations of fairness, as well as concern for the First Amendment rights at stake, ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union's fee. Leaving the nonunion employees in the dark about the source of the figure for the agency fee—and requiring them to object in order to receive information—does not adequately protect the careful distinctions drawn in *Abood.*

*Id.* at 306, 106 S.Ct. 1066. Notice to employees of the nature of the fee, distinguishing between constitutional and unconstitutional expenditures, ensures that the burden lies on the union to justify its allocation of expenses. *Id.* Failure to provide this notice renders collection of fees from nonunion employees unconstitutional. *Id.* at 309–10, 106 S.Ct. 1066.

The Court in *Hudson* declined to prescribe the contents of a constitutionally adequate notice but suggested that unions could "not be faulted for calculating the fee on the basis of [their] expenses during the preceding year," provided that the disclosure included "the major categories of expenses, as well as verification by an independent auditor." *Id.* at 307 n. 18, 106 S.Ct. 1066 (quoting *Bhd. of Ry. & S.S. Clerks v. Allen,* 373 U.S. 113, 122, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963)). Following the Supreme Court's decision, courts have split on what financial information must be presented in the notice and whether an independent audit is required in all circumstances. *See Otto v. Pa. State Educ. Ass'n–NEA,* 330 F.3d 125, 131 n. 6 (3d Cir.) (citing cases), *cert. denied,* —— U.S. ——, 124 S.Ct. 467, 157 L.Ed.2d 372 (2003). Although federal courts have disagreed on the contents of

the *Hudson* notice, none have questioned the basic obligation of unions to provide advance justification to nonunion employees of the basis of the fair share fee. *See Hohe v. Casey,* 956 F.2d 399, 410 (3d Cir. 1992); *see also Otto,* 330 F.3d at 131–33.

■ Despite this clear dictate, the Association contends that it was relieved from its constitutional obligation because, as a "new" organization, it had no history of expenditures on which to estimate the costs that would be incurred on ideological and non-ideological expenses. Left only to "guess" at the proper allocation between permissible and impermissible expenditures, it argues that *any* notification to employees would have been insufficient under *Hudson* and its progeny to justify its fee calculation. *Cf. id.* at 134 (requiring that notice be based on audited financial information from previous year). Implicitly invoking the Latin maxim *lex neminem cogit ad vana seu inutilia peragenda,*[4] the Association suggests that, because any notice would have been constitutionally deficient, no notice was required.

■ Restatement of the position is nearly sufficient to refute its merit. The inability of an entity to meet constitutional prerequisites does not relieve it of the burden but, instead, precludes the entity from acting. Just as the Constitution restrains an official who cannot demonstrate compelling circumstances from imposing a prior restraint, it prohibits a public employees' union that cannot adequately justify a fair share fee from collecting the fee. *See Hudson,* 475 U.S. at 303 n. 12, 106 S.Ct. 1066 (citing Vince Blasi, *Prior Restraints on Demonstrations,* 68 Mich. L.Rev. 1481, 1534–72 (1970)). The absence

---

**4.** "The law forces no one to do vain or useless things." Black's Law Dictionary 1653 (7th ed.1999).

of justification does not excuse the need for it.

■■ The question here is not whether the Association *could have* met its constitutional obligations under *Hudson.* The essence of the *Hudson* opinion is that the burden lies on the union to justify collection of a fair share fee. *See id.* at 305–06, 106 S.Ct. 1066. That it may be unable to do so does not vitiate the necessity for the procedural protection; to the contrary, it underscores its use. Without the exposure required by *Hudson,* unions could employ mere guesswork to arrive at their fee schedules, leaving employees to ponder whether they should go to the considerable expense of bringing a lawsuit merely to discover that the union had employed a constitutional means for calculating the fee. *See id.* A union that cannot satisfactorily explain the method used to compute a fair share fee simply cannot impose the fee. *Id.* at 305–06, 309–11, 106 S.Ct. 1066; *Otto,* 330 F.3d at 134–35. While the contents of the notice required under *Hudson* may be debated, it is clear that *Hudson* mandates some form of advance notice of the union's intent to collect a fair share fee from nonunion employees. *See Hohe,* 956 F.2d at 410.

The Third Circuit recently rejected an argument analogous to the one advanced by the Association. The union in *Otto v. Pennsylvania State Education Association–NEA,* 330 F.3d 125 (3d Cir.2003), asserted that it should be exempted from providing a *Hudson* notice because, as a "small local union," the costs associated with securing independent auditor approval of its prior expenditures would have exceeded projected revenues from collec-

tion of the fee. *Id.* at 131. Essentially, the union suggested that, because adherence to *Hudson* was financially infeasible, adherence was excused. *See id.*

As the Court of Appeals recognized, however, *Hudson* precludes the union from making such an end run around the notice requirement. *See id.* at 132–33. Advance notice of the fair share fee is constitutionally required to protect the rights of nonunion employees. *Id.* at 130–31; *see also Hohe,* 956 F.2d at 410. Permitting the union to evade the dictates of *Hudson* on the basis of excessive cost would sanction violations of nonunion employees' free speech rights to protect the union's bottom line. *Otto,* 330 F.3d at 135. Whatever the union's interests in maintaining a steady flow of income and avoiding the "free-rider" problem, they do not outweigh the First Amendment rights of nonunion employees to subsidize only the political expression of their choice. *Id.* at 130–31, 135; *see Hudson,* 475 U.S. at 305–06, 106 S.Ct. 1066.

■ A similar result must inhere in the present case. Neither the First Amendment nor *Hudson* supports a "new union" exception to the advance notice requirement. *Cf. Otto,* 330 F.3d at 132–33 (declining to find a "small local union" exception to the *Hudson* safeguards "[a]bsent a counter directive by the Supreme Court"). As respects the *Hudson* notice, unions must cut square corners with nonunion employees. The Association failed to meet its constitutional obligation under *Hudson,* and plaintiffs are entitled to summary judgment on this claim.[5]

An appropriate order will issue.

5. The conclusion that no "new union" exception exists to the *Hudson* notice requirement also suggests that the Association violated nonunion employees' First Amendment rights by failing to provide the other *Hudson* proce-

dural safeguards. *See supra* note 3. The court's disposition makes it unnecessary to consider this issue or plaintiffs' remaining claims that the Association breached contrac-

## *ORDER*

AND NOW, this 15th day of January, 2004, upon consideration of plaintiffs' motion for partial summary judgment (Doc. 23), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 23) is GRANTED. The Clerk of Court is directed to defer the entry of judgment until the conclusion of this case.

tual and state statutory obligations in assess-      ing the fair share fee.